L. M. GREENO v. W. S. ROARK.

No. 313.*

1. EVIDENCE—*Hypothetical Questions—Facts Assumed.* A party should not be permitted to ask a hypothetical question containing assumptions which are neither supported by the evidence nor by the legitimate deductions to be drawn from the evidence.

2. ———— *Negligence and Want of Skill—Other Instances.* Upon a trial for the recovery of damages for injuries alleged to have been sustained by reason of unskilful operation in the extraction of a tooth, evidence tending to show negligence in the performance of other operations long prior to the operation in question is incompetent.

Error from Geary district court; O. L. MOORE, judge. Opinion filed January 7, 1899. Reversed.

*Thomas Dever*, and *J. R. McClure*, for plaintiff in error.

*Jas. V. Humphrey*, *G. W. Hurd*, *Robert I. Roark*, and *J. B. Rairden*, for defendant in error.

The opinion of the court was delivered by

McELROY, J.: This action was brought by Roark against Greeno to recover $4000 damages alleged to have been sustained in the negligent, careless and

unskilful extraction by Greeno of one of Roark's teeth. The plaintiff alleged:

"That on the 14th day of March, 1896, defendant was engaged in the practice of dentistry in Junction City; that plaintiff, desiring to have a tooth extracted, applied to defendant in his professional capacity to perform the operation in such manner as in defendant's judgment was proper, which operation defendant engaged to perform with reasonable care and skill; that the defendant performed the operation for hire, but in so doing did not use reasonable care and skill; that on the contrary he negligently, carelessly and unskillfully used surgical or dental instruments which were then in an unclean, poisonous and septic condition, and did thereby injure, bruise, lacerate, puncture, poison and infect the flesh, tissues and membranes in plaintiff's mouth, throat, and in, about and near the angle of the right lower jaw, and did thereby and by means of certain poisonous and dangerous drugs and medicines, whose names and properties are unknown to plaintiff, employed by defendant and injected into plaintiff's flesh during said operation, in such quantities and in such strength as to be poisonous, injurious and dangerous to the life and health of plaintiff, and by the means aforesaid, poison and infect plaintiff's blood; that the plaintiff at the time of the operation was strong and robust, but immediately after the operation, by reason of the aforesaid careless, negligent and unskilful method and means by which defendant performed the operation the plaintiff became violently sick, suffering intense pain, which sickness and pain wholly prostrated plaintiff for many months; that the plaintiff's mouth, throat, face, lower jaw, and right ear, by reason of the injuries, became immediately diseased and impaired in their functions and are at this time, and will remain permanently crippled and impaired in their natural use, and thereby, and by reason of the long and severe illness aforesaid, plaintiff has become permanently impaired in general health and capacity for work."

The defendant's answer was a general denial, and an allegation that if plaintiff did sustain the injury of which he complains, the same arose from natural causes or pathological conditions, his own negligence, and causes other and different from those alleged in the petition. The reply was a general denial. A trial was had by the court and a jury, which resulted in a verdict and judgment for plaintiff for $2000. The defendant filed his motion for a new trial, which was overruled, and he presents the case to this court for review. As plaintiff in error, he sets out nine assignments of error, but confines his argument to four, which we shall consider in their order.

The first assignment is that the court erred in admitting incompetent, irrelevant and immaterial evidence, which was prejudicial to the rights of the plaintiff in error. Under this assignment of error, it is insisted that the hypothetical questions were improperly allowed, for the reason that they assume that the hypodermic needle had been treated to an aseptic process, and that they assume facts which are not supported by any evidence. Doctor King was asked:

"Ques. Now, if on the 14th day of March, 1896, the patient you have spoken of went to the defendant for the purpose of having a wisdom tooth on the right side of the lower jaw extracted, and if the defendant, setting about the extraction of the tooth, inserted a hypodermic needle which he had purchased, and which he did not treat to any aseptic process; if he inserted that needle behind the wisdom tooth mentioned, penetrating the gum as far down as the root of the tooth; and further proceeding to extract that tooth, he inserted in the gums of that patient around and about that tooth forceps which were contaminated with dry blood, and that some three or four hours after that time the patient was seized with an attack

of chills and fever, and shortly thereafter was seized with an attack of vomiting, and a severe headache; and if on the next morning, on the 15th of March of that year, this patient so described was in the condition in which you found this plaintiff when you made the visit you have mentioned on that day, what would you say was the probable cause of his affliction or condition at that time?"

The objection to this question was that it was incompetent, irrelevant, and immaterial, and assumed a state of facts not proven.

Doctor Stone was asked:

"Ques. If the plaintiff in this case, prior to the 10th day of March, 1896, was a healthy and vigorous man in every respect, and if he had not been subjected to any sort of a surgical operation and had not had his skin cut, incised or perforated for a long time prior to that time; if on the 11th or 12th day of March, the same year of course, he was suddenly seized with nervous or jumping toothache, there being no swelling in the gums surrounding that tooth, the only visible defect about the tooth being a slight decay in the crown of the tooth, and if in fact there were no ulcerations or abscesses inflicting the tooth; if that tooth after it first commenced to ache, ached at intervals for two or three days, it being alleviated at one time by oil of cloves, it coming on intensely whenever a drink of water was taken or the plaintiff attempted to masticate; if on the 14th of this month (I began the story on the 10th), if on the 14th of this month, the plaintiff, still in vigorous health in every respect, except for two or three preceding nights his sleep had been broken, he being riding on the cars two of those nights, he being kept awake a good deal of the night the other nights by reason of this toothache that has been mentioned; if in that state of sound health, with the exception of this toothache of the nature I have described, he went to the defendant in this case, who is a dentist, for the purpose of having that tooth operated upon; if the dentist, in proceeding to operate on

that tooth, inserted a hypodermic needle two or three times into the gums surrounding that tooth, and that needle was in an unclean or septic condition at the time it was used, then the dentist proceeded to extract the tooth, and the plaintiff then left the office ; and if the plaintiff within a short time, some three or four hours after that operation, and on the same day, was seized with violent headache, chills, became sick at. the stomach to such an extent that he had to vomit, was so sick in this manner that he had to lie down after noon, that a fever speedily developed, that the next morning his pulse was 140, and his temperature was 106 ; and, further, the next morning the side of his jaw, commencing at or near the point where the hypodermic needle had been injected, was severely swollen, and remained severely swollen for a period of four or five or six months thereafter ; and if in six or eight days after that time, from the inside of the mouth, a half of an inch from the place where the tooth had been extracted, an opening was broken by the gathering of the pus at that place where the swelling existed, from which the pus proceeded to escape and did escape, and ran until the 10th day of April following, when an external incision was made which connected with the opening on the inside of the mouth and furnished further drainage for the pus ; and if in the extraction of that tooth only one root was removed and the other remained, and the place where the tooth was removed healed up in a short time, no escape of pus taking place from that place, no inflammation being excited there, except such as was made in all adjacent parts of the mouth by the escape of the pus into the mouth, I will ask you, doctor, what in your judgment was the cause of the trouble that I have mentioned?   I should have said that, in addition to having fever and all that sort of thing, the patient was seized with an acute attack of septicemia.   What in your judgment was the cause of this plaintiff's sickness and affliction? ''

This was objected to as incompetent, irrelevant, and immaterial, and because predicated on facts not proved.

It will be unnecessary to examine the other hypothetical questions of which complaint is made, for the reason that the above questions contain all the objectionable features urged against such other questions. It is insisted that these hypothetical questions were predicated on many facts of which there was no evidence offered ; that the questions assumed (1) that Greeno did not treat the hypodermic needle to any aseptic process and that it was in an unclean or septic condition when used ; (2) that he inserted the needle to the depth of the root of the tooth ; (3) that Roark was a healthy, vigorous man in every respect ; (4) that he had not been subjected to any sort of surgical operation nor had his skin been cut, incised or perforated for a long time prior thereto ; (5) that he was seized with a nervous, jumping toothache ; (6) what then he took a drink of water or attempted to masticate the pain came on intensely ; (7) that he was seized with a violent headache ; and (8) that the question called for the expert's opinion as to Roark's condition.

The rules applicable to hypothetical questions are fully set out in the following authorities :

"An expert cannot give an opinion on a hypothetical statement which is not supported by the facts as brought out at the trial. There must be evidence tending to prove the matters stated in a hypothetical case to render it proper. But some latitude must necessarily be given in the examination of medical experts, and in the propounding of hypothetical questions for their opinions, the better to enable the jury to pass upon the questions submitted to them. The opinion is the opinion of the expert, and if the facts are found by the jury as the counsel by his question assumes them to be, the opinion may have some weight ; otherwise not. It is the privilege of the counsel in such cases to assume, within the limits of the evidence, any state of facts which he claims the evi-

dence justifies, and have the opinion of experts upon the facts thus assumed. The facts are assumed for the purpose of the question and for no other purpose. If the facts stated in hypothetical cases are not proved, the opinion, of course, goes for nothing." Lawson, Exp. Test. p. 152.

"It is also claimed that in three of the hypothetical questions put to this same witness by the prosecution, on his cross-examination, matters were contained, as facts upon which to base said questions, which the evidence did not warrant to be assumed. We are satisfied from a close examination of the record that there was evidence from which it might legitimately have been inferred that the deceased was, previous to her coming to Mrs. Sleight's, strong, healthy, and robust, and that spots were discovered, upon the examination of the womb, that might have been made by a little instrument." (*People v. Aiken*, 66 Mich. 476, 33 N. W. 821.)

"It may be true that the court ought not to allow hypothetical questions to be propounded to an expert witness which are plainly outside of the case and based upon a statement of facts as to which there is no pretense that they are proved by the evidence in the case. The rule in that respect must be that, in propounding a hypothetical question to the expert, the party may assume as proved all facts which the evidence in the case tends to prove, and the court ought not to reject the question on the ground that, in his opinion, such facts are not established by the preponderance of the evidence. What facts are proved in the case, when there is evidence tending to prove them, is a question for the jury and not for the court. The party has the right to the opinion of the expert witness on the facts which he claims to be the facts of the case, if there be evidence in the case tending to establish such claimed facts, and the trial judge ought not to reject the question because he may think such facts are not sufficiently established." (*Quinn v. Higgins*, 63 Wis. 664, 670, 24 N. W. 482.)

Greeno v. Roark.

The rule seems to be that the assumptions in a hypothetical question must either be supported by the evidence, or they must be legitimate deductions drawn from the evidence.   In the hypothetical questions it was assumed, as we have said, that Greeno inserted the needle to the depth of the root of the tooth ; that Roark was a healthy, vigorous man in every respect at the time of the operation ; and that he had not been subjected to any sort of surgical operation, nor had his skin been cut, incised or perforated for a long time.   There is no direct evidence to support either of these assumptions.   They are not only not supported by the evidence, but there is no evidence tending to prove them.   Nor are these assumptions legitimate deductions from the facts proved at the trial.

It is also contended that the testimony given by Doctor King on rebuttal was erroneously admitted.   He was permitted to testify that he was present in Doctor Greeno's office when he operated on patients occasionally within the last two years, saw Greeno use a hypodermic needle on patients, and observed that the doctor would pick up the hypodermic syringe or needle, attach it, fill it with anesthetic fluid or fluids such as he wished to inject into the tissues, and inject the fluids into them.   He testified that he never saw Greeno insert the needle in any disinfecting fluid prior to operating.   This testimony was too remote to establish the charge of negligence and it should not have been permitted to go to the jury.

We deem it unnecessary to comment on the other assignments of error, further than to say that the trial court committed no reversible error in refusing or giving instructions.   From what we have said, it follows that a new trial should be awarded.   The judgment is reversed and the cause remanded for a new trial.