## THE STATE v. LEN RIDDLE, Appellant.

### Division Two, November 13, 1912.

1. **BURGLARY: Variance.** To sustain a conviction of burglary, it is not necessary to charge the ownership of the money, to steal which the indictment alleges defendant entered a certain house, and consequently it is not necessary to prove its ownership as charged. Hence, there is no fatal variance between the

allegations of an indictment charging that defendant broke into and entered the dwelling house of Lizzie Edde with intent to steal therefrom "certain goods and chattels" and did steal $8.15, "the money and property of the aforesaid Lizzie Edde," and the proof, which shows that the said Lizzie was not the owner of the money stolen. The gist of the offense of burglary is entering the house with intent to steal.

2. KLEPTOMANIA: As Distinguished from Right-and-Wrong Test: Instruction. An instruction telling the jury that kleptomania is a defense to a charge of larceny or burglary, defining kleptomania as an "irresistible impulse to steal," should not be given. The true rule is the right-and-wrong test, which is that the person committing the act is unable, by reason of mental infirmity, to comprehend that the act is wrong, and therefore should be acquitted. Besides, in this case, the evidence is reviewed and is *held* to be insufficient to establish kleptomania.

Appeal from Hickory Circuit Court.—*Hon. C. H. Skinker*, Judge.

AFFIRMED.

*J. W. Montgomery, W. L. Pitts* and *Rechow & Pufahl* for appellant.

(1) The court gave improper instructions on the part of the State and refused proper instructions asked by the defendant. a. There was no evidence on which to base the second instruction, but the jury found him not guilty of the charge to which that had reference. b. The fifth instruction is entirely too general and is a dissertation on insanity rather than an instruction. c. Defendant's fifth instruction should have been given as there was no direct or positive evidence that defendant entered into the house and the breaking and entering, if proven at all, was by circumstantial evidence. d. Defendant's eighth instruction should have been given. e. Defendant's ninth instruction correctly declares the law under the evidence and should have been given. (2) Kleptomania is a well-recognized form of insanity, and when the evidence

tends to sustain such a defense the instruction should clearly define that form of insanity and it is error not to do so. Looney v. State, 10 Tex. App. 520, 38 Am. Rep. 646; Erwin v. State, 10 Tex. App. 700; Harris v. State, 18 Tex. App. 287; Wright v. State, 4 Neb. 407; Hart v. State, 14 Neb. 572; Burgo v. State, 26 Neb. 639; People v. Sprague, 2 Park Crim. Rep. 43; Stevens v. State, 31 Ind. 485; Bradley v. State, 31 Ind. 492; Sawyer v. State, 35 Ind. 80; Grubb v. State, 117 Ind. 277; State v. Bartlett, 43 N. H. 224; State v. Felter, 25 Ia. 67; State v. Mewherter, 46 Iowa, 88. (3) That the instruction on insanity given by the court is entirely too general; see State v. Sharp, 233 Mo. 269, also authorities cited above.

*Elliott W. Major,* Attorney-General, and *John M. Atkinson,* Assistant Attorney-General, for the State; *A. W. Stewart* of counsel.

(1) Instructions 2 and 4 are proper on larceny from a dwelling house, but as the defendant was acquitted of the charge of larceny he cannot be heard to complain of these instructions, even though they were erroneous. State v. Sprague, 149 Mo. 409. Instructions 5, 6 and 7 fully instruct the jury on the law applicable to the defense of insanity. State v. Porter, 213 Mo. 55. (2) The weight of evidence in a criminal case is for the jury, and when there is evidence of defendant's guilt, a demurrer thereto will be overruled. State v. Forrester, 63 Mo. App. 534; State v. Cunningham, 154 Mo. 176. (3) The jury heard the evidence and had the law before them as given by the court, and the verdict was responsive to the law and the evidence. State v. Wood, 137 Mo. 10. (4) It is immaterial to whom the property taken belonged, so far as concerns the burglary charge. State v. Hutchinson, 111 Mo. 257. On the charge of larceny the indictment charges that the money taken was the prop-

erty of Lizzie Edde, while the evidence showed that
it belonged to some other party. The defendant was
acquitted of the charge of larceny, and cannot be hurt
by this variance. The defendant could be acquitted of
one charge and convicted of the other. State v.
Sprague, 149 Mo. 409; State v. Wood, 137 Mo. 10;
State v. Helms, 179 Mo. 281; R. S. 1909, Sec. 4528.
(5). The chief defense in this case seems to be that of
insanity. The issue was fairly submitted to an impar-
tial jury and they found against his plea of insanity,
and in the absence of an error of law impelling that
verdict it must stand. State v. Barker, 216 Mo. 530;
State v. Dreher, 137 Mo. 25; State v. Crowe, 202 Mo.
55; State v. Church, 199 Mo. 639; R. S. 1909, Sec.
5210.

FERRISS, J.—Defendant was convicted of bur-
glary in the second degree, upon an indictment which
charged him with breaking into and entering the dwell-
ing house of Lizzie Edde, with intent to steal there-
from "certain goods and chattels." The indictment
also charged the larceny of certain money contained
in the dwelling, the property of said Lizzie; but of
this latter charge the defendant was acquitted.

The position taken by the defendant here appears
from the following excerpt from the brief filed by his
counsel:

"The defense is that the defendant, from all the
facts in the case, could not have been at the house at
the time it is claimed to have been entered. That
there is a fatal variance between the allegations in the
indictment and proof in this, that it is alleged that he
entered the house with the intent to steal eight dollars
and fifteen cents, the money of Lizzie Edde. There is
an absolute failure of proof that she had any such
money in the house; but if he went in there to steal
any money, it was the money of Lottie Hack. The
jury acquitted him of any larceny. The evidence shows

that the defendant is a kleptomaniac, and even if he committed the offense as charged, should have been acquitted on that ground.

"The court refused proper instructions in the case, and gave improper instructions."

It is unnecessary to set out the facts testified to concerning the burglary itself. It is not seriously contended that the evidence for the State does not sustain the finding of the jury as to the act itself. The case in this regard was fully established by the evidence for the State. The main defense is insanity. The facts concerning this claim will appear in the opinion.

I. The charge of variance cannot be sustained. It was not necessary to charge the ownership of the money in the indictment, and consequently not necessary to prove it as charged. Proof that defendant entered the house with intent to steal sustained this charge. The proof showed that the money taken, although in charge of Lizzie Edde, was the property of another. The gist of the offense is the entering the house with intent to steal. [State v. Tyrrell, 98 Mo. 354; State v. Hutchinson, 111 Mo. 263.]

II. It was claimed as a defense that when the defendant committed this burglary and larceny he was suffering from a form of insanity known as kleptomania, which counsel, in an instruction offered, defined as "an irresistible propensity to steal." To sustain this position, evidence was introduced tending to prove that, some years prior to this transaction, defendant had been guilty of theft. The instances attempted to be shown were the following: During the absence from home of the owner, he stole a basket of eggs and traded them at a store, leaving at the store the basket, which was subsequently returned to the owner. Again, he hitched his team to the wagon of a

relative, when the latter was away from home, and drove it to mill with three sacks of the relative's wheat. The wagon was returned the next day by a brother of defendant. At another time he invited some persons to come over to his father's house the next day to a turkey dinner. They came, and defendant furnished the turkey. On the night preceding the dinner a turkey was stolen from a brother-in-law of defendant, living seven miles distant. The remaining alleged theft was the taking by defendant of a colt from a pasture distant two miles from the house of the owner and trading it off to a person who lived five miles away. He drove the colt on the public road in day time, and stated to two witnesses that he had bought it. The testimony relative to these matters was introduced by defendant. There was no counter evidence. It cannot be said to have the force of a conviction after full trial. There is no evidence in the case of any insanity taint in defendant's family, nor of any conduct on his part tending to show mental infirmity other than the bare facts of this case and the other above transactions. So far as the immediate case is concerned, defendant, two days before the burglary, was at the house of Lizzie Edde, and saw a bag containing money put away behind a picture on the wall. He entered the house when the dwellers therein were absent and the house locked, and took the money, some eight dollars, from this bag. It was immediately charged that defendant was the guilty party, and subsequently, in company with his brother, he went to the home of Lizzie Edde, and returned the full amount, in the meantime having gone to a store and exchanged the money, which was in silver for bills. Two doctors who were in court at the trial, and heard the testimony, testified the opinion that, under the facts in evidence, defendant was a kleptomaniac.

One doctor qualified as follows: "Q. I will ask you if you have in your practice and in your reading

had occasion to study mental diseases as well as physical diseases? A. Yes, sir. Q. Have you had both practical and theoretical experience? A. Yes, sir.''

The other doctor said this: ''Q. I will ask you if you have had practical experience in mental diseases, and also quite extensive reading on that subject? A. Well, so far as my personal experience is concerned, it has been very limited. I have read and studied the subject. Q. Has your reading been quite extensive? A. Not as much as in other branches of medicine, because we do not have to deal with it very much.''

The court gave a general instruction, in approved form, on insanity, telling the jury they should acquit if they found that defendant was so deranged in his mental faculties ''as to be incapable of understanding that said acts were wrong.'' The only objection to this instruction is that it does not contain a proper definition of kleptomania.

The following instruction offered by defendant was refused:

''9. The jury are instructed that kleptomania is recognized as a form of insanity manifesting itself in an irresistible propensity to steal; and if you believe from all the facts and circumstances in evidence that the defendant is a kleptomaniac, then it is your duty to acquit him, although you may further believe from the evidence that he is guilty of some one or more of the offenses as defined in other instructions.''

The contention of defendant upon the instructions given and refused raises the question whether this court shall recognize the doctrine of ''irresistible impulse,'' as distinguished from the ''right-and-wrong'' test as applied to the particular act charged. The difference, as recognized by the legal and medical authorities, seems to be this. In the latter case, the person committing the act is unable, by reason of mental infirmity, to comprehend that the act is wrong. The doctrine of ''irresistible impulse'' applies where the

person knows that the act is wrong, but is driven by irresistible impulse to commit the act. Defendant insists that the court should have defined kleptomania, as requested, and given him the benefit of the "irresistible impulse" doctrine.

This doctrine has received recognition by some courts and text-writers. [1 Whart. Crim. Law (10 Ed.), Sec. 44; 1 Bish. Crim. Law (8 Ed.), Sec. 383b; State v. McCullough, 55 L. R. A. (Iowa) 378.] It is rejected in Texas. The cases in that State on which defendant relies have been overruled by the later case of Lowe v. State, 44 Tex. Crim. Rep. 224, which adheres to the "right-and-wrong" test, and holds that a general instruction laying down this test is sufficient where the defense is kleptomania. The doctrine is repudiated in this State. Our former decisions hold to the "right-and-wrong" test. [State v. Pagels, 92 Mo. 300; State v. Soper, 148 Mo. l. c. 237; State v. Dunn, 179 Mo. l. c. 115.] We are not disposed to overrule these former decisions. A full discussion of this subject, setting forth the rulings in the several States, is found in Vol. 3, pp. 448-55, Witthaus & Becker's Med. Juris.

Knowledge of the right and wrong of the particular act charged being the only test, it is obvious that the instruction given fully covers the point, and that of defendant was properly refused. The jury found that the defendant was sane, and this finding is fully sustained by the record, which, in our judgment, is barren of any substantial evidence to show kleptomania or any other form of insanity.

III. It is unnecessary to go over the instructions given and refused, in detail, or to discuss defendant's claims regarding same. Those given were in proper form and covered every phase of the case. Those offered by defendant, and refused, were in part based upon a wrong theory of the case as to variance and

insanity, matters already covered in this opinion. Others offered were fully covered by those given.

Defendant, who was ably defended, was clearly guilty; he had a fair and most favorable trial. There is no reversible error in the record. The judgment is, therefore, affirmed.

*Brown, P. J.,* and *Kennish, J.,* concur.