## THE STATE v. O. J. ROSE, Appellant.

### Division Two, May 29, 1917.

1. **JURORS: Service for Parts of Two Weeks.** Members of the panel who had served two days as jurors the week preceding the trial and been in attendance upon the court two days thereafter during the week they were impaneled to try the case, were not ineligible or disqualified under a statute which provided that "no petit juror shall be permitted to serve on such jury for more than one week consecutively during any term of court." The statute limits the right of challenge to the time of actual service of the juror, and not to the period of his attendance upon the court under the *venire.*

2. **HYPOTHETICAL QUESTION: Insanity: Based on Absence of Evidence of Fact.** Where the entire testimony prior to the cross-examination of defendant's expert witness had been confined to showing insanity on the part of defendant's father and congenital mental and physical weakness on the part of certain brothers and sisters of defendant, and there was no evidence of a taint of insanity in the family of defendant's mother, it was not error for the hypothetical question propounded by the prosecuting attorney on cross-examination to assume that there was no insanity in the mother's family.

3. **IMPROPER EVIDENCE: Exclusion on Wrong Ground.** If the evidence offered was improper on any ground, an insufficient or er-

271 Mo.—2

roneous·reason assigned by the trial court for excluding it does not constitute prejudicial error. It is the ruling of the trial court, and not the reasons therefor, to which the appellate court looks to determine error.

4. **EXPERT WITNESS: Own Estimate of Competency.** The competency of witness to testify is not to be measured by his own estimate of his qualifications, but by the trial court; and if the preliminary examination of a physician satisfies the court that he is competent to testify as an expert on insanity and the facts justify that ruling, a statement by him that he is not an expert ' on insanity does not disqualify him to testify.

5. **REOPENING OF CASE: Discretion of Trial Court.** The reopening of the case by the State for the introduction of the check alleged to have been forged by defendant was a matter within the discretion of the trial court; and in the absence of prejudice, to the accused because thereof, will not be condemned by the appellate court.

6. **INSANITY: Former Affirmative Adjudication: Discharge.** The presumption that one who has been adjudged insane continues in the same condition does not obtain after his discharge as cured; and the presumption of sanity which always obtains in the absence of countervailing proof is not removed by such former adjudication after the commission of the crime and his discharge, but the proper inquiry is, did the defendant know he was doing wrong at the time he committed the offense?

7. **INSTRUCTION: Refusal of Defendant's.** If the instructions given were clearly and accurately framed and were ample in themselves, the trial court did not err in refusing instructions asked by defendant.

Appeal from Buchanan Criminal Court.—*Hon. Thomas F. Ryan*, Judge.

AFFIRMED.

*Mytton & Parkinson* for appellant.

(1) The court erred in refusing to quash the array of jurors, for the reason that they had served during the preceding week of the same term of court. Laws 1911, p. 307, sec. 13; Williamson v. Transit Co., 202 Mo. 345. (2) The court erred in permitting the prosecuting attorney to ask the hypothetical questions propounded to the witnesses, for the reason that they contained many facts not included in the evidence. State v. Palmer, 161 Mo. 152; State v. Dunn, 179 Mo. 95; State v. Brown, 181

State v. Rose.

Mo. 192. (3) The hypothetical questions called upon the witness to express his opinion on matters peculiarly within the province of the jury and required the witness to reach his own conclusions and be the judge of certain facts pertaining to the handwriting on the check, the witness not having qualified as a handwriting expert, instead of leaving that fact to the jury. State v. Hyde, 234 Mo. 252; State v. Witherspoon, 231 Mo. 719; Sec. 6382, R. S. 1909. (4) The court erred in permitting witnesses to answer hypothetical questions when the witnesses themselves admitted they were not experts along that line. (5) The court erred in refusing to permit the defense to recall appellant's mother for further testimony at the close of the State's rebuttal. (6) Defendant had been adjudged insane by a competent tribunal and the court was without power to put defendant on trial.

*Frank W. McAllister*, Attorney-General, and *Henry B. Hunt*, Assistant Attorney-General, for the State.

(1) The court's action in overruling the motion to quash the array of jurors, filed by appellant, was correct. The language of section 13, Laws 1911, page 307, means that such jurors shall actually serve for one whole week. Humphrey v. State, 86 S. W. 431; Provident Institution for Savings v. Burnham, 128 Mass. 461. (2) The hypothetical questions propounded to the witnesses fully recited all the material facts in evidence, and did not include facts not in evidence. State v. Duestrow, 137 Mo. 87; Rogers on Expert Testimony (2 Ed.), 71, 72. In putting hypothetical questions to the expert witnesses, counsel for the State had the right to assume the facts in accordance with his theory of them; it was not essential that he state the facts as they actually existed. State v. Bell, 212 Mo. 124; State v. Privitt, 175 Mo. 225; Rogers on Expert Testimony (2 Ed.), 65. (3) The check described in the information was properly submitted to the experts in the hypothetical questions; with regard to said check, they were not required to qualify as handwriting experts. State v. Holloway, 156 Mo. 230; State v. Pagels, 92 Mo. 309; State v. Welsor, 117 Mo. 579; State v. Soper, 148 Mo. 239. (4)

The other checks introduced by the State and included in the hypothetical questions given to the experts were relevant on the question of sanity or insanity of appellant; and the witnesses were not required to qualify as handwriting experts. State v. Hodges, 144 Mo. 53; State v. Bell, 212 Mo. 123; State v. Holloway, 156 Mo. 230. (5) Possession of forged instruments and the utterance of them soon after they were forged are cognate evidence that the appellant was the forger. State v. Bell, 212 Mo. 128. (6) Where a physician has had eighteen years experience as a practitioner of medicine, and during that time has been a student of mental and nervous diseases and in charge of a sanitarium for one and one-half years where mild forms of insanity and nervous troubles were treated, he is qualified as an expert on insanity, although disclaiming to be an expert on the subject of insanity generally. State v. Bell, 212 Mo. 125. (a) The question whether the witness possesses the necessary qualifications to render him competent to testify in the character of an expert, is a preliminary question addressed to the court. State v. Daly, 210 Mo. 676; Rogers on Expert Testimony (2 Ed.), 39. (b) And such decision resting largely in the discretion of the court, a case will not be reversed unless such discretion is abused. Helfenstein v. Medart, 136 Mo. 615; Commonwealth v. Sturtivant, 117 Mass. 137; Allen's Appeal, 99 Pa. St. 202; Rogers' Expert Testimony (2 Ed.), 56. (7) It is a matter within the discretion of the trial court whether a party shall be allowed to reopen his case and introduce further testimony. State v. Currier, 225 Mo. 651; State v. Pennington, 124 Mo. 391; State v. Eisenhour, 132 Mo. 148; State v. Smith, 80 Mo. 520; State v. Dunn, 179 Mo. 118. (8) The fact that appellant had been adjudged insane by the county court of Platte County after the information in this cause was filed did not take away the right and authority of the circuit court to put appellant on trial. Sec. 5207, R. S. 1909; State v. Crane, 202 Mo. 80; State v. Church, 199 Mo. 634. The question of appellant becoming insane after the filing of the information should have been raised by motion. State v. Church, 199 Mo. 626; State v. Crane, 202 Mo. 79.

WALKER, P. J.—Appellant was charged with forgery in the second degree in the criminal court of Buchanan County and upon a trial was convicted and his punishment assessed at five years' imprisonment in the penitentiary. From this judgment he appeals.

The specific charge, by information, against the defendant was the forgery of a check for $2700.95 drawn on the Bank of Buchanan County, made payable to himself and signed by S. S. Allen. The latter at the time the check is alleged to have been made, August 15, 1914, was president of the Allen Grocery Company of St. Joseph. On this day he was absent from the city and the defendant came to the store on other business and in the temporary absence of the manager sat down at the latter's desk and was seen by the stenographer to be writing. A book of blank checks on the Bank of Buchanan County, to some of which S. S. Allen had signed his name, had been left lying on the desk where the defendant sat. Morrow, the manager of the grocery company, on his return from luncheon discovered that three checks having Allen's name thereon had been torn from the book. Defendant left the store before Morrow's return. The same day defendant presented to the Empire Trust Company of St. Joseph for deposit and credit the check described in the information, indorsed with his name, which was accepted by the Trust Company and he was credited with the amount of same. On the Wednesday following the 15th day of August, 1914, which was Saturday, inquiry was made of Morrow, the manager of the grocery company, by the Buchanan County Bank in regard to three checks drawn on the bank payable to the defendant, signed by S. S. Allen and indorsed by the defendant. In reply to this inquiry Morrow went to the bank and identified the checks as the ones which had been torn from the grocery company's check book. One of these checks was that for $2700.95 described in the information. It appears that the defendant, when this check was placed to his credit by the Trust Company, obtained a cashier's check for $2000 payable to himself. He tried at several banks to cash it and finally succeeded in so doing at a bank in Atchison, Kansas, where he purchased a diamond from the cashier and presented the

check for payment, receiving the balance in excess of the price paid for the diamond in cash. Evidence was intro-. duced in regard to two other checks signed by S. S. Allen and drawn on the Bank of Buchanan County. All of these checks were stated by the defendant to represent money made by him in speculating in sugar and that he had sold his holdings to the Allen Grocery Company. There had been no business dealings between the defendant and the Allen Grocery Company in which the former had been given checks by the latter. Thereafter the defendant fled from the State and was subsequently apprehended on the Pacific Coast, brought back and let to bail. At the trial the defense of insanity was interposed, resulting in the introduction pro and con of a great volume of testimony, much of which was wholly irrelevant. Same will be considered where it is necessary to a discussion of the errors complained of.

I. Error is assigned in the refusal of the trial court to quash the array of jurors. The ground alleged was that each member of the array had served on the petit jury of said court more than one week consecutively during the special adjourned term at which the defendant was tried. The admission of the parties at the time of the overruling of defendant's motion to quash the array contains a sufficient statement of the facts. It is as follows:

Challenge of Jurors.

"It is admitted by the State and the defendant that each of the jurors were subpoenaed to be here on the 5th day of October and that they served two days of last week, then were excused until the 11th day of October of this week and this is the second day of this week."

The statute alleged to have been violated is applicable to the selection and service of jurors in counties of from 100,000 to 175,000, to which class Buchanan County belongs. The pertinent portion of this statute is as follows: "No petit juror shall be permitted to serve on such jury for more than one week consecutively during any term of court: Provided, that in no case shall this section cause the discharge of any juror during the ac-

tual pendency of the trial of any cause." [Sec. 13, Laws 1911, p. 307.]

The purpose of this statute is to free trials from the presence of professional jurors and to equalize jury service, so that no juror in the counties designated shall be required, subject to the proviso contained in the section, to serve more than one week during any term of court. On account of the plain terms of this statute it is not deemed necessary to discuss the distinctions made by courts of last resort in other jurisdictions between the ineligibility and the incompetency of jurors so far as regards the right to challenge same under statutes similar to the one under review. The statute here, according to its express terms, limits the right of challenge to the time of actual service of the juror and not to the period of his attendance upon the court under the *venire*.

The members of the panel had served two days as jurors the week preceding the trial and they had been in attendance on the court two days thereafter during the week they were impaneled to try this case. They were, therefore, not ineligible nor disqualified within the meaning of the statute. Not only is this construction in accord with the letter and purpose of the statute, but it finds support in the rulings of other courts in construing statutes of like import.

Under a North Carolina statute (Laws N. C. 1879, ch. 200) it is provided, in effect, that one who had acted in the same court as a grand or petit juror within two years next preceding such term of the court should not within the time stated be competent for jury service. The court held, in passing upon a challenge based on the ground of service, that "the disqualification attaches to the juror who 'has acted' or served as such, and not to one who has been at the court under a summons, liable only to be called on for such service." [State v. Thorne, 81 N. C. 1. c. 558.] This ruling was subsequently cited with approval by the same court in State v. Brittain, 89 N. C. 481, and State v. Whitfield, 92 N. C. 831.

Section 4529, Kirby's Digest, Laws of Arkansas, provided that the term of service of any person summoned to serve on a petit jury in the circuit court should be limited

to four weeks, and that no person so serving should be eligible for further service during that term or the next succeeding term. The Supreme Court of that State, in construing this section, held that four weeks' actual service was necessary to render a person ineligible for further service during the term for which he was impaneled. It appearing that the jurors challenged had not served four weeks, they were eligible. [Humphrey v. State, 74 Ark. 554.]

It is held by the Supreme Court of Kansas that a challenge of a juror on the ground that he has served as such in a court of record during the year next preceding the trial, is, under section 3, chapter 54, General Statutes of Kansas 1889, not a good cause for challenge unless it is shown that the juror actually sat in the trial of a cause. Where it appeared that he was merely summoned on the regular panel at a preceding term but was discharged from attendance because there were no jury cases to try, the challenge was properly overruled. [State v. Lowe, 56 Kan. 594.]

The ruling in Williamson v. Transit Co., 202 Mo. 345, relied on by appellant to sustain his contention in this regard, does not militate against the conclusion here reached. The statute there construed (Sec. 6547, R. S. 1899, now Sec. 7342, R. S. 1909) provides that those who have served on a jury in any court of this State within twelve months next preceding shall be subject to challenge by either party for that cause. There as here the ground of challenge is expressly stated to be service within the time limited, and not simply that the jurors had been summoned for service.

In view, therefore, not only of the language of the statute itself but of the uniform ruling upon like enactments in other jurisdictions, defendant's contention is overruled.

II. Defendant contends that the prosecuting attorney in the hypothetical question framed by him and propounded on cross-examination assumed facts not in evi-

**Hypothetical Questions.** dence. To illustrate, it is alleged that the question assumed that there was no taint of insanity in the defendant's mother's family. There was no evidence on this subject. After the hypothetical question framed by the prosecuting attorney had on cross-examination been propounded to defendant's expert witnesses and same had been answered, counsel for defendant in rebuttal asked the latter's mother if she did not have an uncle who had been adjudged insane. Upon objection the court ruled that this inquiry was only proper if limited to the relations by blood of the mother. This objection might have been even more restricted as applied to the admission of proof of the insanity of collateral relatives of the accused. [State v. Baker, 246 Mo. l. c. 373.] This error, however, favored the defendant and is not a ground of complaint.

Without limiting the inquiry as indicated by the court, the defense persisted in the offer and the court excluded same, to which ruling the defendant saved exceptions. While the ruling of exclusion as finally made was not on the ground first stated, the testimony as offered being improper on any ground, defendant will not be heard to complain. It is the ruling of the trial court and not the reasons assigned therefor to which we look to determine whether error has been committed. An insufficient or erroneous reason will not constitute grounds for reversal if the ruling was not prejudicial. [State v. Kaiser, 124 Mo. 651; State v. Mitchell, 98 Mo. 657.] This rule is uniformly applicable regardless of the nature of the case under review. [State ex rel. v. Finn, 100 Mo. 429; Green v. St. Louis, 106 Mo. 454; Bissell v. Warde, 129 Mo. 439; Egger v. Egger, 225 Mo. 116; Chlanda v. Transit Co., 213 Mo. l. c. 262; Green v. Term. R. R. Co., 211 Mo. 18.] The entire testimony prior to the cross-examination of defendant's witnesses had been confined to showing insanity on the part of defendant's father and congenital mental and physical weakness on the part of certain brothers and sisters of defendant. It was therefore a legitimate deduction from all of defendant's testimony that there was no in-

sanity in the mother's family. [State v. Privitt, 175 Mo. 207; Greeno v. Roark, 8 Kan. App. 390.]

The evidence tended to establish the facts alleged to have been improperly hypothetically assumed by counsel for the State, not only in regard to the assumption of an absence of insanity in the mother's family, but that defendant prior to the time stated had not been subject to delusions or hallucinations. We held in Fullerton v. Fordyce, 144 Mo. 1. c. 531, that a hypothetical question based upon what the evidence tended to establish was not improperly framed. We therefore hold that defendant's contention in this regard is without merit.

III. A Doctor Byrd testified on behalf of the State. His testimony as an expert is objected to and its admission is challenged as error. The ground for this contention is that the witness stated that he was not an expert on insanity and hence a hypothetical question in regard thereto should not have been propounded to him and his answers admitted in evidence. This objection is without merit. The competency of a witness to testify as an expert is not to be measured by his own estimate of his qualifications, but by the trial court after an examination to that end. [State v. Daly, 210 Mo. 1. c. 676.] The preliminary examination of this witness satisfied the court that he was competent to testify as stated. The record of this testimony is such as to sustain the conclusion that the court did not abuse its discretion in thus ruling. Defendant therefore was not thereby prejudiced.

*Expert Testimony.*

IV. The reopening of the case by the State for the introduction in evidence of the check alleged to have been forged was a matter within the discretion of the trial court. In the absence of prejudice to the accused on this account we will not interfere. It is well settled law that such a course is not subject to criticism unless it be shown that injury to the defendant resulted therefrom. There is no evidence or indication of such a result her. [State v. Worton, 139 Mo. 1. c. 533; State v. Dunn, 179 Mo. 1. c. 118; State v. Currier, 225 Mo. 1. c. 651.]

*Reopening Case by State.*

V.   Defendant contends that having been adjudged insane about one year after the commission of the crime with which he was charged, he should not have been put upon this trial.   The authorities of the hospital in which he was confined reached the conclusion soon after he was incarcerated therein that he was feigning insanity and discharged him as sane.   The plea was not interposed that the defendant was insane at the time he was arraigned for trial.   Having been discharged as cured of his former mania or because it was determined that he had never been insane, there was no occasion or authority to test his sanity under the provisions of Section 5207, Revised Statutes 1909, and such a course was not pursued.   If the condition first stated had existed, viz., former insanity, the presumption as to the continuance of this condition did not obtain after his discharge from the hospital.   [State v. Vaughn, 223 Mo. 149.] It is only upon a defendant's motion for a hearing as defined in the statute cited that he is entitled to revoke the same.   [State v. Church, 199 Mo. 605; State v. Crane, 202 Mo. 54.]   Defendant, instead of demanding a hearing under such statute, proceeded to trial, interposing in his defense voluminous testimony by which it was sought to be shown that he was mentally irresponsible for the act for which he was being tried.   There was no evidence of such incapacity at the time of the commission of the offense.

The test in determining this matter was, did the defendant know that he was doing wrong at the time of the commission of the offense?   This measure of mental responsibility has uniformly been applied in this State when the defense of insanity has been interposed.   [State v. Morris, 263 Mo. 339; State v. Riddle, 245 Mo. 451; State v. Miller, 111 Mo. 542; State v. Kotovsky, 74 Mo. 247.]   This ruling accords with reason and avoids the technical distinctions invoked in other jurisdictions in the presence of a plea of insanity, which tend only to interfere with a wholesome administration of the criminal law. The presumption of sanity which always obtains in the absence of countervailing proof (State v. Barker, 216 Mo. l. c. 544) was not removed in this case and the jury was reasonably satisfied from a preponderance of the

Insanity.

evidence that the defendant was sane at the time of the commission of the crime. We find no cause for interfering with this finding.

VI. No fault is to be found with the instructions. They follow well established precedents, are clearly and accurately framed, and thus served as a proper guide for the triers of the fact in making up their verdict. Ample in themselves, the court did not err in refusing the instructions asked by the defendant.

Instructions.

The defendant had a fair trial and has no substantial ground of complaint. The judgment of the trial court should therefore be affirmed, and it is so ordered. All concur.