AUGUSTA EISENHARDT, BYRON EISENHARDT, HARLAN EISENHARDT, MATILDA EISENHARDT and AUGUSTA EISENHARDT, Administrator of the Estate of HERMAN EISENHARDT, Plaintiffs in Error, v. HARODL SIEGEL, MAGGIE VERNA SIEGEL, LOUIS PEEPER and E. W. GUENTHER, Trustee, Defendants in Error.—119 S. W. (2d) 810.

Division One, September 17, 1938.

*Wm. T. Powers* and *C. I. Hoy* for appellants.

*A. J. Bolinger* for respondents.

BRADLEY, C.—This cause is to determine title to 198 acres of land in Morgan County. Title was adjudged to be in defendants in error, Harold Siegel and his wife, Maggie, subject to a deed of trust held by defendant in error, Peeper, in which deed of trust defendant in error, Guenther, was trustee. While plaintiffs in error, who were plaintiffs below, brought the cause to this court by writ of error, we shall refer to the parties as plaintiffs and defendants as styled below.

The facts are these: John and Herman Eisenhardt were brothers. John owned the farm in question. He was a paranoiac and had been for many years; was never married. Herman was married; had a wife, plaintiff Augusta; and a daughter, plaintiff Matilda; and two sons, plaintiffs Byron and Harlan. Herman Eisenhardt deserted his wife and family in 1921, but there was no divorce. July 18, 1904, John Eisenhardt was adjudged insane, and F. H. Siegel, father of defendant Harold Siegel, was appointed his guardian. John was in

the asylum at Nevada (expenses paid by his guardian) at intervals from July, 1904, until August 11, 1927. On the last mentioned date, F. H. Siegel resigned as guardian, and Herman Eisenhardt, John's brother, was appointed guardian of John. After Herman was appointed guardian, he and John lived together on John's farm. August 29, 1931, on petition of Herman, John was declared sane by the probate court, and Herman was discharged as guardian, and it was found by the probate court that John's estate owed Herman $2547.26. On the same day that John was adjudged to be sane, but after such adjudication, he conveyed the farm by warranty deed to Herman for a recited consideration of $3000. Following the description the deed recites: "Subject however, to the following terms and conditions:

"Said property shall not be sold, alienated or incumbered by the said Herman Eisenhardt so long as the said John Eisenhardt shall live and if he, the said John Eisenhardt, shall live longer than the said Herman Eisenhardt, then at the death of the said Herman Eisenhardt the said above described lands shall revert to and become the absolute property of the said John Eisenhardt. The said Herman Eisenhardt to provide for and maintain the said John Eisenhardt during the term of his natural life as part of the consideration of this deed."

About seven A. M., April 8, 1932, Herman was found dead in the cow lot on the farm where he and John resided. Herman was shot by a shot gun, and the circumstances tend strongly to show that he was shot and killed by John. There was no plausible explanation, except John's insanity, as to why he would kill his brother. So far as appears they got along well, and Herman was devoted to John. At the time Herman was killed he was about sixty years of age, and John was seventy-four or seventy-five. John was not prosecuted, but was again adjudged insane and sent back to the asylum, and F. H. Siegel, his former guardian, was again appointed guardian. F. H. Siegel, as guardian, took charge of the farm and in September, 1932, through proceedings in the probate court, sold the farm at private sale to his son, defendant, Harold Siegel, for $1365. John had no money or personal property, and the sale was necessary in order to pay John's expenses at the asylum. Harold Siegel had to borrow part of the money in order to pay for the farm, and he borrowed from defendant Peeper and gave a deed of trust on the farm to secure the note given to Peeper. At the time of the trial, John, the ward, had no money left, and Morgan County was paying for his care at the Nevada Asylum.

This cause was filed June 16, 1933, and resulted, as stated, in a judgment and decree for defendants. The court found that "the defendants Harold Siegel and Verna Siegel are the owners in fee simple of the lands described in plaintiffs' petition, subject to a certain

deed of trust wherein E. W. Guenther is trustee and Louis Peeper is beneficiary. That none of the plaintiffs have any right to, lien upon, or interest in the said lands or any part thereof." And it was adjudged that plaintiffs and each of them be "forever barred and precluded from setting up, claiming or attempting to claim any right or title to, interest in, or lien upon the lands" described.

Plaintiffs' cause is based on the theory that John murdered Herman, and that, under the law of this State, the murder of Herman by John would preclude reversion of the title to John. On the other hand defendants contend that "plaintiffs did not sustain the burden of proof that John" murdered Herman, and say, in effect, that even though John did kill Herman, and under such circumstances as to constitute murder, if John were sane, still, under the evidence as to John's sanity at the time, the situation should be considered as though the accusing finger did not point to John. The finding of the court was general, hence no specific finding on the issues of murder and sanity. Plaintiffs say that John having been adjudged sane by the probate court on August 29, 1931, and no further adjudication as to John's sanity prior to Herman's death, the adjudication of John's sanity on August 29, 1931, cannot be attacked collaterally, arguing in this respect that defendants' contention that John was insane at the time of the alleged murder, is a collateral attack on the adjudication of John's sanity by the probate court on August 29, 1931. If John had been charged with murdering Herman, no one would contend, under the facts here, that the defense of insanity could not have been made.

Plaintiffs had no case, except on the issue of murder, and there was no murder if John was insane, even though it be assumed that John killed Herman under such circumstances as would constitute murder by a sane man. It would be more than an anomaly to say that plaintiffs could proceed on the theory of murder, but that defendants could not interpose the defense of insanity, which is one of the generally recognized defenses of one charged with the commission of crime. Citation of authority is not necessary, but see Wharton on Homicide (3 Ed.), sec. 536; 1 Wharton & Stille's Med. Jur. (5 Ed.), sec. 162; State v. Rose, 271 Mo. 17, l. c. 27, 195 S. W. 1013. And the test in determining the issue of sanity is: Did the accused at the time of the commission of the alleged crime "know that he was doing wrong?" [State v. Rose, supra.]

We shall rule the present case on the theory that the trial court found that John shot and killed Herman, and under such circumstances as to constitute murder, if John were sane, but also found that at the time of the killing, John was not criminally responsible because of his insanity.

Perry v. Strawbridge et al., 209 Mo. 621, 108 S. W. 641, 123 Am. St. Rep. 510, 16 L. R. A. (N. S.) 244, was in partition. The de-

fendants, Callie and Zora Evans, were the children of George Evans by a marriage prior to his marriage to Lillie Maude Evans, who, prior to her death, owned the real estate in question. Lillie Maude Evans had no children or decendants of children. George murdered his wife, Lillie Maude, and in three hours thereafter committed suicide. In this situation, Callie and Zora Evans contended that under what is now Section 324, Revised Statutes 1929 (Mo. Stat. Ann., sec. 324, p. 210), their father, George Evans, was "entitled to one-half of the real and personal estate belonging to the wife at the time of her death," subject only to the payment of her debts. The trial court sustained the contention of Callie and Zora Evans, and the other interested parties appealed. It was held by this court that George Evans, having murdered his wife, could not inherit her property, and that his children could not inherit such property through him. What is now Section 324, was enacted in 1895 (Laws 1895, p. 169) and has come down unchanged and reads:

"When a wife shall die without any child or other descendants in being capable of inheriting, her widower shall be entitled to one-half of the real and personal estate belonging to the wife at the time of her death, absolutely, subject to the payment of the wife's debts."

It will be observed that Section 324 says that the widower *shall* be entitled, etc., but notwithstanding the positive and apparent mandatory language of the statute, it was held, as stated, in Perry v. Strawbridge, supra, that the widower, under the facts there, acquired no interest in the property in question. The court said (209 Mo. l. c. 645, 108 S. W. 641):

"The pathway of judicial literature from the earliest period down to the present is literally strewn with cases, which like beacon lights have guided the hand of justice in preventing unjust, unrighteous, absurd, unreasonable and abhorrent results from the use of general words and expressions in statutes. To cite and quote more would be but to become tedious. We have gone thus far on account of the newness of the particular question of this case. Under these authorities (cases reviewed) we should not and will not hold that 'widower' as used in Section 2938, supra (now Sec. 324), means one who has created a condition by murderous hands and heart. This case is without the statute. 'Widower' as there used means one who has been reduced to that condition by the ordinary and usual vicissitudes of life, and not one who, by felonious act, has himself created that condition."

It is conceded in Perry v. Strawbridge that the conclusion reached is contrary to the weight of authority in this country. Where a different view has been taken it is on the principle of construction that "courts cannot annul the positive enactment of the Legislature by reading into it the limitations of the civil law, or the promptings of humanity." [1 Woerner's American Law of Administration (3

Ed.), sec. 64a, p. 188.] Woerner cites cases on both sides of the question, and says: "There seems to be no escape on principle from the conclusion that at common law, and under the statutes and constitutions of the various states of the Union, courts are not warranted in disregarding the course of descent and distribution, or the conclusiveness of duly executed wills, to divert the succession from the murderers of ancestors or testators, and the authorities now strongly preponderate in this direction."

The subject of devolution of title to real estate was considered at length in Perry v. Strawbridge, supra, and the conclusion reached that a murderer could not in this State inherit real property from his victim. We are not disposed to change the rule. For further discussion of the question and related questions, see 31 L. R. A. 67; 39 L. R. A. (N. S.) 1088; 42 L. R. A. (N. S.) 83; 6 A. L. R. 1408; 71 A. L. R. 288.

Under the law laid down for this State in Perry v. Strawbridge, supra, the title to the land in the present case would not have reverted to John Eisenhardt upon the death of Herman, if John *murdered* Herman, hence the remaining question is: Does the evidence of John's insanity, at the time Herman was killed, take the case out of the rule laid down in Perry v. Strawbridge, supra? The evidence of John's insanity was all one way and to the effect that he was in fact insane at the time Herman was killed, and had been for many years. We do not deem it necessary to set out the evidence of John's insanity. Certainly it was sufficient to raise the issue, and on the theory that the trial court found that John was insane, there was no possible result to be reached other than that reached, viz.: That the title to the land in question, under the deed, reverted to John upon Herman's death.

The judgment should be affirmed, and it is so ordered. *Ferguson* and *Hyde, CC.,* concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur, except *Lucas, J.,* not sitting.