**UNITED STATES ex rel. MAZY v. RAGEN.**
No. 8680.

Circuit Court of Appeals, Seventh Circuit.
June 28, 1945.

Rehearing Denied July 13, 1945.

George F. Barrett and William C. Wines, both of Chicago, Ill., for appellant.

Martin S. Gerber, of Chicago, Ill., for appellee.

Before EVANS, SPARKS and MINTON, Circuit Judges.

SPARKS, Circuit Judge.

The Warden of the Illinois State Penitentiary appeals from an order of the United States District Court that a petition for writ of habeas corpus be amended to conform to the evidence, granting the writ, and releasing petitioner from his custody forthwith.

Petitioner asked such relief on the ground that he had already served full time on his sentence of ten years to life for robbery while armed, but that the Parole Board refused to discharge him. He also asserted that he had been improperly defended by counsel appointed by the court, that witnesses were not permitted to testify for him, that the state's attorney held up evidence until the trial was over, and that

he was temporarily insane at the time he committed the crime.

Upon the hearing on the petition and return thereto, the parties stipulated and the court found that petitioner had been charged with the crime of armed robbery on June 14, 1927, in St. Clair County, and that on September 3, 1927, a petition to inquire into his sanity was filed, and a jury, impaneled to try that issue, found him insane and that such insanity occurred after the commission of the crime. He was committed to the Chester State Hospital for the criminal insane to remain until restored and then to be returned to St. Clair County for trial. September 26, 1927, an indictment was filed in St. Clair County, and April 23, 1928, petitioner was arraigned and counsel appointed to assist him in his defense. May 4, 1928, he was convicted by a jury and sentenced to a term of ten years to life. When petitioner was returned to St. Clair County for trial, no jury was impaneled to determine whether his sanity had been restored, and there was no record in the Circuit Court of that county that any jury was impaneled to conduct such a hearing; and the records of the Circuit and Probate Courts of that county and of similar courts at Chester, Illinois, reveal that no adjudication of restoration to sanity was made at any time by any of those courts.

The record contains the following administrative order discharging petitioner from the Chester State Hospital, dated March 27, 1928, and signed by the Department of Public Welfare by its Director:

"It Is Ordered that Alex Mazy, a patient in the Chester State Hospital, be discharged in the usual manner and in accordance with the law.

"Alex Mazy was received * * * September 3, 1927, on mittimus from the Circuit Court of St. Clair County, charged with robbery while armed.

"The mittimus stated that Mazy was to be confined in the Chester State Hospital 'until restored and that he be then returned to the authorities of St. Clair County, Illinois, for trial on the charge of robbery.' Mazy has been under observation of the Mental Health Officer since admission. In his report dated March 1, 1928, he states, he is of the opinion that Mazy now shows no sign of mental disease and should be returned for trial. Dr. Frank A. Stubblefield, Managing Officer, Chester State Hospital, therefore recommends that Mazy be returned * * * for trial, and in a letter dated March 16, 1927 (sic), Hon. H. C. Lindauer, State's Attorney of St. Clair County requests that this action be taken.

"Therefore, the Managing Officer * * * is authorized to discharge Alex Mazy from said Institution in accordance with the provisions of the law, and return said patient to the Sheriff of St. Clair County, Illinois."

Section 593 of the Criminal Code, 38 Ill. R.S. § 593, provides: "A person that becomes lunatic or insane after the commission of a crime or misdemeanor shall not be tried for the offense during the continuance of the lunacy * * *. If, after the verdict of guilty, and before judgment pronounced, such person become lunatic * * * then no judgment shall be given while such lunacy * * * shall continue. And if, after judgment and before execution of the sentence, such person become lunatic * * * then in case the punishment be capital, the execution thereof shall be stayed until the recovery of said person from the insanity * * *. In all of these cases, it shall be the duty of the court to impanel a jury to try the question whether the accused be, at the time of impaneling, insane or lunatic."

The District Court held that this statute provided an absolute mandate to the trial court to impanel a jury to inquire into the prisoner's return to sanity as well as to determine his insanity, and that in the absence of such jury determination of sanity, the court was deprived of jurisdiction to try the defendant, and his conviction was void. "The petitioner, in this particular case, legally speaking, was never arraigned, tried or convicted because the mandatory provisions of the Statute above quoted were ignored." [55 F.Supp. 143, 145.]

The petition for habeas corpus made no showing that any attempt had ever been made to secure petitioner's release by resort to proceedings in the state courts on the ground relied upon by the District Court for the release—in fact, the record conclusively establishes the contrary. Not only had the petitioner never appealed to the state courts for release on this ground; he did not even apply to the District Court on the ground relied upon by it. The only reference in his petition to his mental condition is that he was temporarily insane *at the time he committed the crime,* although the jury impaneled in September, 1927, to inquire into his sanity found the contrary, that his insanity occurred after commission

of the crime. Because the court based his discharge on a reason not assigned in his petition it was thought necessary that the petition be amended to conform to the evidence, and this was done.

 Where relief from detention on conviction of criminal charges is sought by habeas corpus proceedings it is always necessary to establish that the court by which the detention was ordered lacked some jurisdictional prerequisite to authority to enter such order. Such relief is never to be had for irregularities not involving jurisdiction. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461. Where the detention from which the relief is sought is based on state court process, it is necessary to show in addition that all remedies available in the state courts have been exhausted. This principle is applicable whether the ground relied upon be a federal or non-federal one —"Upon the state courts, equally with the courts of the Union, rests the obligation to guard and enforce every right secured by that Constitution (of the United States)." Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 342, 79 L.Ed. 791, 98 A.L.R. 406.

The District Court in its opinion referred to the principle of non-interference of federal courts in state court judgments as one of comity or policy, stating that it is the established law in the federal courts "that the writ of habeas corpus cannot and should not, be used as a means of reviewing errors of law and irregularities not involving jurisdictional questions * * *." It was convinced in this case, however, that failure of the court to obey the mandate of the statute rendered its judgment "absolutely void," and that when those circumstances were disclosed, it became the duty of the court to grant the writ and discharge the petitioner forthwith.

 We think the ruling of the District Court loses sight of the principles adverted to, that relief by habeas corpus proceedings is never to be granted except for jurisdictional defect, and, in the case of the person detained under warrant of a state court, then only when he is without remedy in the state courts. It must not be forgotten that the Johnson case, supra, relied upon by the District Court as authority for its action here, involved a person detained, not in the custody of state authorities, but in a federal prison, by virtue of federal court process. Subsequent decisions of the Supreme Court have in no way relaxed the requirement that state remedies be exhausted before resort to federal courts. "Ordinarily an application for habeas corpus by one detained under a state court judgment of conviction for crime will be entertained by a federal court only after all state remedies available, *including all appellate remedies in the state courts and in this Court by appeal or writ of certiorari,* have been exhausted." (Our emphasis.) Ex parte Hawk, 321 U.S. 114, 64 S.Ct. 448, 450, 88 L.Ed. 572. The extent of the exhaustion of remedies required before relief may be granted in the federal courts is well illustrated in the case of the petitioner in the Hawk case. After numerous unsuccessful attempts to obtain relief in both state and federal courts, including four in the United States Supreme Court, he was granted certiorari by the latter court, sub nomine Hawk v. Olson, from a decision of the Nebraska Supreme Court, April 23, 1945, 65 S.Ct. 1021. The necessity of exhausting state remedies was again stressed in White v. Ragen, also decided April 23, 65 S.Ct. 978. See also United States ex rel. Foley v. Ragen, 7 Cir., 143 F.2d 774. Hence we are convinced that, regardless of the merits of the amended petition, it was error for the District Court to discharge petitioner in the absence of any application to the state courts for relief on the grounds relied upon.

 There is a further reason why we think the District Court should not have acted to discharge the petitioner here. His decision was based on his construction of the Illinois statute, which, we think, raises a state or non-federal question rather than a federal one. It is, of course, true, as the court stated, that an insane person can not plead nor can he be sentenced. Violation of that rule would without doubt raise the federal question of violation of the due process requirements of our federal Constitution. But we think this case raises no such question. The facts here are that petitioner, charged with committing an offense under the Illinois law, was found by a jury duly impaneled for the purpose, to have become insane after the alleged commission of the crime and was therefore committed to a state hospital to remain until he regained his sanity; thereafter a medical officer, presumably pursuant to his official duties, found that he had regained his sanity and recommended that he be returned for trial and, again we presume, pursuant to this recommendation and the duly authorized request of the state's attorney,

he was discharged from the hospital and returned to the sheriff of the county where the indictment pended. There he was represented by counsel who raised no question as to the sufficiency of the administrative finding of sanity and order of discharge. We cannot say that these facts so transgress the requirements of due process as to raise a federal question. Nor can we agree with the District Court that the Illinois statute quoted requires jury trial for restoration to sanity.[1] As we read that statute it is silent as to the mode of determining that issue, and we think it is for the state to determine whether the procedure followed in this case was so defective, in the light of its own laws, as to deprive the court of jurisdiction to render a valid judgment (Cf. Nobles v. Georgia, 168 U.S. 398, 18 S.Ct. 87, 42 L.Ed. 515; Simon v. Craft, 182 U.S. 427, 21 S.Ct. 836, 45 L.Ed. 1165), and, if so, what procedure is to be followed in the future as to this petitioner.

Judgment reversed.

1 "It has been held that one who has been legally adjudicated insane has no right to a jury trial in a proceeding to determine whether he has regained his sanity, and it has been so held even where a constitutional right to such a trial in original proceedings to adjudicate insanity is recognized." See Annotation, 91 A.L.R. 98 and cases there cited. See also People v. Rice, 83 Cal.App. 55, 256 P. 450; State v. Rose, 271 Mo. 17, 195 S. W. 1013.