JESSE HOLDOM, Conservator of the estate of Paul Holz,
v.

THE ANCIENT ORDER OF UNITED ·WORKMEN.

*Filed at Ottawa October 11, 1895—Rehearing denied March 10, 1896.*

INSURANCE—*effect of killing of insured by insane beneficiary.* The right of recovery of an insane beneficiary under a policy of life insurance is not forfeited by his killing the insured under such circumstances that the killing would be murder if he were sane.

*Ancient Order United Workmen* v. *Holdom*, 51 Ill. App. 200, reversed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. FRANK BAKER, Judge, presiding.

On April 10, 1888, appellee made and delivered to one Carl Holz a certificate, in consideration of the payment of an examination fee and all dues and assessments, etc. The certificate states that Holz is a member of Alleghany Lodge No. 346, located in Chicago, and entitled to participate in the beneficiary fund to the amount of $2000, which, at his death, shall be paid to his son, Paul Holz. Suit was brought by the beneficiary, by his conservator, on that certificate, the declaration averring that Carl Holz departed this life on the 16th day of December, 1890; avers compliance by Holz with all the rules and laws of the order, and that he, at the time of his death, was a member in good standing, and appellee had satisfactory evidence of his death; avers that Paul Holz is a minor son of deceased and a beneficiary in the certificate; avers the appointment of a conservator, and that $2000 has not been paid, nor any part thereof. Appellee pleaded the general issue, and a special plea alleging that the beneficiary in the certificate, on December 15, 1890, killed and murdered the insured, whereby he forfeited and lost all rights as a beneficiary under the certificate. Repli-

cation was filed to the special plea, averring that the beneficiary did not murder the insured, as alleged in the plea, but averring that he did kill the insured, as alleged, while the beneficiary was insane. To that replication appellee filed a general demurrer, which was overruled, and appellee elected to stand by its demurrer on an agreed state of facts. Judgment was entered for plaintiff for $2000, with costs of suit. An appeal was prosecuted to the Appellate Court for the First District, where that judgment was reversed and a judgment entered for the defendant. The beneficiary, by his conservator, prosecutes this appeal.

CASE, HOGAN & CASE, for appellant:

If the beneficiary, Paul Holz, killed Carl Holz without committing a crime, and thereby an injury was done the next of kin of the deceased, to whom would Paul Holz, or the estate of Paul Holz, be liable on this account? Certainly not to the insurance company. Upon this point see *Insurance Co.* v. *Brame,* 95 U. S. 754; *Insurance Co.* v. *Railway Co.* 25 Conn. 265.

Paul Holz, now in the insane asylum at Kankakee, not being a fit subject for punishment for any alleged crime, should not be injured in his civil rights by reason of acts committed while insane. *Insurance Co.* v. *Broughton,* 109 U. S. 121 ; *Insurance Co.* v. *Crandall,* 120 id. 527.

The statutes of this State distinctly provide that a criminal offense consists in the violation of a public law, in the commission of which there shall be a union or joint operation of act and intention, or criminal negligence. Crim. Code, sec. 8, par. 337, chap. 38.

Manifestly, no crime was committed by the beneficiary, Paul Holz. The case of *Schreiner* v. *High Court of I. O. O. F.* 35 Ill. App. 576, is decisive of the case at bar, so far as the ruling of our courts on this point is concerned.

JAMES MCCARTNEY, for appellee:

An insane person is responsible in a civil action for his torts in all cases where a sane person would be responsible. *McIntyre* v. *Sholty*, 121 Ill. 660; 1 Chitty's Pl. 76; *Hatch* v. *Insurance Co.* 120 Mass. 550; *Amicable Society* v. *Bolland*, 4 Bligh, 194; *Insurance Co.* v. *Palmer*, 25 Beav. 605; Shearman & Redfield on Negligence, sec. 57; Porter on Insurance, 129, *et seq.;* Cooley on Torts, 97, *et seq.*

An insane person causing the death of another by an act which would be felonious if sane, is liable in damages therefor. *McIntyre* v. *Sholty*, 121 Ill. 660.

A beneficiary in an insurance policy who kills the insured cannot recover the insurance money. *Insurance Co.* v. *Armstrong*, 117 U. S. 591; *Hatch* v. *Insurance Co.* 120 Mass. 550.

A person insured in the Ancient Order of United Workmen society may change his beneficiary at will. The beneficiary has no vested interest in the insurance money until the death of the insured. *Bagley* v. *A. O. U. W.* 131 Ill. 498; *Martin* v. *Stubbings*, 126 id. 387; *Supreme Council* v. *Franke*, 137 id. 118; *Insurance Co.* v. *O'Brien*, 92 Mich. 584; *Sabin* v. *Phinney*, 134 N. Y. 423.

Public policy would not favor permitting an insane person to profit by his own wrong. Greenhood on Public Policy, pt. 1, rule 11; Cooley on Torts, 97, *et seq.; McIntyre* v. *Sholty*, 121 Ill. 660; *Morse* v. *Crawford*, 17 Vt. 598; *Krom* v. *Schoonmaker*, 3 Barb. 647.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

The only question of law presented in this record is, does an insane beneficiary in a life insurance policy, who kills the insured under such circumstances as would cause the killing to be murder if the beneficiary were sane, thereby forfeit his right to recover the insurance money? This presents a question of first impression.

The causing the death of an assured by felonious means, by a sane assignee of a policy of life insurance, has been held sufficient to defeat a recovery on the policy. (*New York Mutual Life Ins. Co.* v. *Armstrong*, 117 U. S. 591; *Prince of Wales Ins. Co.* v. *Palmer*, 25 Beav. 605.) The general doctrine is, that insane persons are liable for damages caused by their torts, though they are free from criminal liability. In *Morse* v. *Crawford*, 17 Vt. 499, it was held that the insanity of a bailee did not relieve him from liability for destroying property held by him as bailee. In *Cross* v. *Kent*, 32 Md. 581, a lunatic was held liable in damages for burning a barn, whether occurring through negligence or as an insane act. In *Taggard* v. *Innes*, 12 Up. Can. (C. P.) 77, it was held that insanity constituted no defense to an action for damages in trespass *vi et armis*. In *Williams* v. *Hays*, 143 N. Y. 442, it was held that insanity of one who is the owner *pro hac vice* of a vessel did not relieve him from liability to other owners for negligence in her management. In this latter case many authorities are collected and considered and the question is treated exhaustively. In *McIntyre* v. *Sholty*, 121 Ill. 660, it was held that insanity did not avail as a defense to a civil action for damages resulting from killing a person under circumstances that would have constituted a felony had the person who did the killing been sane at the time.

Such is the current of authority as to the liability of an insane person for his torts. By the great weight of authority it is held in such cases that the lunatic, not having the element of intention or malice, is only liable for damages that would be compensatory, and not liable for vindicatory damages. And such is the rule in this State. (*McIntyre* v. *Sholty*, *supra*.) The reason for the rule that an insane man shall be held liable for his torts is, where a loss must fall upon one of two persons equally innocent it must be borne by the one who caused it. The liability is in no way dependent upon the intent or design to commit the act, for a lunatic can have no will and can

form no design or intent, and would not be liable for a
tort wherein the intent is a necessary ingredient.    Such
is the rule with reference to torts.    A very different ques-
tion is, however, presented with reference to a contract
of insurance and the liability of a company on its policy.
In the absence of an express stipulation relieving the
company from liability in such case, where there is no
fraud or design, a fire insurance company is not relieved
from liability on its policy by reason of loss by fire
through the negligence of the assured or his servants.
*Shaw* v. *Robberds,* 6 A. & E. 75; *Walker* v. *Martland,* 5 B. & A.
171; *Busk* v. *Royal Ex.* 2 id. 73; *Waters* v. *Insurance Co.* 11
Pet. 213 ; *Dobson* v. *Sotheby,* 1 M. & M. 90; *Insurance Co.* v.
*Lawrence,* 10 Pet. 507; *Catlen* v. *Insurance Co.* 1 Sumn. 434;
*St. Louis Ins. Co.* v. *Glasgow,* 8 Mo. 713; *Gates* v. *Insurance
Co.* 5 N. Y. 469; *Nelson* v. *Insurance Co.* 8 Cush. 477; *Mathews*
v. *Insurance Co.* 11 N. Y. 14; *Mickey* v. *Insurance Co.* 35 Iowa,
174; *Huckins* v. *Insurance Co.* 11 Fost. 247; *Johnson* v. *Insur-
ance Co.* 4 Allen, 388; *Cumberland* v. *Douglas,* 58 Pa. St. 423;
*Gove* v. *Insurance Co.* 48 N. H. 41; *National Ins. Co.* v. *Webster,*
83 Ill. 470.

If a loss is incurred by a peril insured against, the
liability exists even though the remote cause be the neg-
ligence of the assured or his servants, unless that negli-
gence be so gross as to authorize the presumption of
fraud.    In *Karow* v. *Continental Ins. Co. of New York,* 57 Wis.
56, in a clearly reasoned and well considered opinion, it
is held that where there is nothing in the policy to the
contrary, an insurer is not released from liability because
the property was burned by the assured while insane.
The reason for such rule is, that an insurance company,
for a consideration paid, has assumed the risk of the prop-
erty being destroyed by fire.    That assumption of risk
includes injuries to the property by fire resulting from
the negligence of the assured or his servants, where not
expressly excepted.    It also is an assumption of all risk
of the assured becoming a lunatic or insane and destroy-

ing the insured property when in that condition, unless, by the terms of the policy, such liability is saved by an express exception. An insane person may be liable for burning the property of another, for the reason that where a loss must be borne by one of two innocent persons it must fall on the one occasioning that loss; yet the burning of his own insured property does not necessarily injure the insurance company, if that company, for a sufficient valuable consideration, assumes the risk. That assumption of risk is the contract of the company, for a consideration paid to it. On no consideration of policy or justice should it be relieved from its contract, in the absence of fraud, malice or design. These qualities can not exist in the mind of an insane person. To hold that the insurance company should be relieved from liability under such circumstances would be to change the contract of the parties at the instance of one for its benefit, to the prejudice of the other without his consent, and where there is no misrepresentation, mistake or fraud, covin, design or malice. Such is not the law. A fire policy covers all losses or damage by fire, except such as are excepted by the terms of the policy, and such as are caused by the intended, voluntary act, design, assent or procurement of the assured.

It has been held by repeated adjudications in various courts of this country and in Great Britain, that where there is no express provision in a life policy that in the event of the insured dying by his own hand the policy shall become void, the right to recover thereon is not forfeited, and the policy is not vacated by reason of the suicide of the assured while in a state of temporary insanity. The proposition is so fully established and recognized that a citation of authorities to sustain it would be supererogation. Here, again, the reason for the rule is like that in case of fire insurance policies. The contract of the parties is to be construed as it has been made, and not to be changed at the request of one of the parties to

it for that party's benefit without the consent of the other, where there has been no fraud, mistake, misrepresentation, deceit or other intentional wrong to induce the making thereof or to accelerate the time of payment. These rules do no violence to what has been termed a maxim of the insurance law of all nations,—*i. e.*, that the assured can not recover for loss produced by his own wrongful act, (*Thompson* v. *Hopper*, 6 El. & Bl. 191,) by which is meant an act intentionally wrongful.

In a case before the Supreme Court of North Carolina in 1888, it appeared the complainant instituted proceedings for the assignment of dower in the estate of her husband, for whose death she had been convicted as an accessory before the fact and sentenced to imprisonment for life. The trial court ruled against the allowance of dower, and on appeal it was said: "We are unable to find any sufficient legal ground for denying to the petitioner the relief which she demands, and it belongs to the law making power alone to prescribe additional grounds of forfeiture of the right which the law itself gives to a surviving wife. Forfeitures of property for crime are unknown to our law, nor does it intercept, for such cause, the transmission of an intestate's property to heirs and distributees, nor can we recognize any such operating principle. We have searched in vain for an authority or ruling on the question, and find no adjudged case. The fact that none such is met with affords a strong presumption against the proposition." *Owens* v. *Owens*, 100 N. C. 240.

In the recent case in the Supreme Court of Nebraska, of *Shellenberger* v. *Ransom*, 25 L. R. A. 564, it appears A died owning an estate, and left surviving her husband, a son and daughter. The husband became tenant by the curtesy and the children took an estate in fee. Under the statute of that State on the death of a child the father inherits. The father murdered the daughter to obtain that inheritance. He conveyed the lands, and the vendees

filed a bill for partition against the son, who set up the fact of the daughter having been murdered by the father, of which the vendees had notice, and prayed the court to find the father took no estate, etc. It was said: "Knowledge of the settled maxims and principles of statutory interpretation is imputed to the legislature. To the end that there may be certainty and uniformity in legal administration, it must be assumed that statutes are enacted with a view to their interpretation according to such maxims and principles. When they are regarded the legislative intent is ascertained. When they are ignored, interpretation becomes legislation in disguise. The well-considered cases warrant the pertinent conclusion that when the legislature, not transcending the limits of its power, speaks in clear language upon a question of policy, it becomes the judicial tribunals to remain silent." The court held the father became vested with the estate of the daughter.

The line between legislation and interpretation is clear, and for the courts to declare a forfeiture for crime where the legislature has remained silent is legislation by judicial tribunals,—a subject with which they have no concern. No question of public policy is presented by this record. There can be no public policy in the punishment of such persons.

This discussion brings us back to the first proposition with which this opinion commenced, and we hold: where an insane beneficiary in a life policy kills the assured under such circumstances as would cause the killing to be murder if the beneficiary were sane, such killing does not cause a forfeiture of the policy nor bar his right of recovery for the insurance money.

The judgment of the Appellate Court is reversed and that of the circuit court of Cook county is affirmed.

*Judgment reversed.*