Mutual Life Ins. Co. of N. Y. v. Ritsher et al., 196 Ill. App. 27.

# Mutual Life Insurance Company of New York v. Louise H. Ritsher and Herbert Hammond.

## On Appeal of Louise H. Ritsher, Appellant, v. Herbert Hammond, Appellee.

### Gen. No. 21,019.

1. FRAUDS, STATUTE OF, § 25*—*when test as to possibility of time of performance governs.* The test whether a contract is within the Statute of Frauds is whether at the time such agreement was made it could have been performed within a year, and not whether in fact such contract was so performed, and hence, if performance within one year was possible, the contract is not within the statute.

2. FRAUDS, STATUTE OF, § 25*—*when applicable to contract not to be performed in a year.* A contract is within the Statute of Frauds if by its terms it appears that the contract cannot be performed within one year from the time when the contract was made.

3. FRAUDS, STATUTE OF, § 25*—*when expectation of parties as to time of performance not controlling.* An assignment of a policy of life insurance to secure moneys then due, or which in the future might be due from insured to assignee, is not within the Statute of Frauds, although such contract fixes no definite time during which it is to continue in force, and although it appears from the contract that parties contemplated that it would continue in force for more than a year, for the reason that such a contract is not within the statute if by a reasonable construction its terms did not require it to remain in force for more than a year.

4. INTERPLEADER, § 8*—*what essential.* In a bill of interpleader, both claimants are in a position similar to that of plaintiff in possessory actions, where plaintiff must recover on the strength of his own title, and not on the weakness of the title of his adversary.

5. INTERPLEADER, § 17*—*when evidence insufficient to support decree.* In an interpleader suit brought by an insurance company to determine the rights of claimants to a fund arising under a policy issued by complainant and on which liability was admitted, where defendants claimed the fund respectively as the beneficiary named in the policy, and as assignee thereof, under an assignment made by insured in his lifetime, evidence examined and a decree finding the equities in favor of defendant claiming as assignee *held* erroneous under the evidence.

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Mutual Life Ins. Co. of N. Y. v. Ritsher et al., 196 Ill. App. 27.

Appeal from the Circuit Court of Cook county; the Hon. JOHN P. McGOORTY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1914. Reversed and remanded with directions. Opinion filed December 8, 1915. *Certiorari* denied by Supreme Court (making opinion final).

MONTGOMERY, HART, SMITH & STEERE, for appellant.

JOHN P. AHRENS, for appellee.

MR. JUSTICE PAM delivered the opinion of the court.

Appellant and appellee were defendants in a bill of interpleader filed by the Mutual Life Insurance Company of New York, hereinafter referred to as the complainant, to determine to whom should be paid the net proceeds of a life insurance policy issued by it on the life of Edward C. Ritsher, the deceased husband of the appellant, hereinafter referred to as the assured. Answers having been filed by both the appellant and the appellee, the court entered an interlocutory decree wherein it directed, *inter alia,* that the complainant pay into court the sum of $8,434.83, being the net proceeds due upon the said policy after deducting the amount of a loan which had been made to the assured by the complainant; and that upon payment of said amount to the clerk of the court, complainant be dismissed from further prosecution of its bill and released of all claims under said policy of insurance.

The sole controversy here presented is, whether the appellant or the appellee is entitled to the proceeds of this policy, appellant claiming as beneficiary under the policy, and appellee by virtue of an assignment to him executed by appellant and the assured. This issue was referred to a master who found the equities with the appellee and recommended that a decree be entered directing the clerk of the court to pay the proceeds of the policy ($8,434.83) to the appellee. Upon a hearing, the court entered a decree as recommended, and from this decree appellant has prosecuted this appeal.

The evidence discloses that on April 23, 1900, the

Mutual Life Ins. Co. of N. Y. v. Ritsher et al., 196 Ill. App. 27.

complainant issued a policy of insurance on the life of the assured, in the sum of $10,000, payable to the appellant, her executors, administrators and assigns; that on September 28, 1903, appellant and the assured executed an assignment of said policy to the appellee and delivered the same to him. Appellee testified that same were delivered as collateral security for debts then owing or which might in the future be owing by the assured to him; that when such arrangement was made, he believed appellant was present; that during November, 1908, the assured desired to make a loan on said policy from the complainant and requested him (appellee) to deliver the policy to complainant; that "Mr. Ritsher said he would borrow what money he could from the insurance company and allow the assignments to remain with me, in the same manner as they were before;" that the money received on this loan was to be paid to appellee.

The evidence further discloses that complainant made a loan on said policy in the sum of $1,330, the net proceeds of which ($1,303.58) were sent to appellee by check payable to the order of appellant and the assured, and that the appellee in turn inclosed the check in a letter to the appellant and the assured, with a request to indorse the check and return it to him, which was done; that the assured died on June 2, 1910, upon which date the policy was in full force and effect; that after deducting the amount due complainant upon the aforementioned loan, there was a balance due on the policy of $8,544.83; that within a few days after the death of the assured, appellee notified complainant that he claimed the full amount of said policy, and exhibited the assignment previously referred to and left same with it as evidence of his right to the said fund; that at the time of his death, the assured was indebted to appellee on notes and checks in a sum greater than the amount due on said policy; that these

notes were collateral notes; that though security was recited therein they did not mention the insurance policy in question or any other insurance policy; that these notes and checks aggregated more than the amounts actually advanced by the appellee to the assured.

These notes bore six per cent. interest, but there was evidence that commissions were paid by the assured to appellee to secure these loans. The exact amount of these commissions does not appear in the evidence, appellee testifying that he kept no books of the commissions paid; that while a memorandum was made at that time, no permanent record was kept thereof. The master found that the commissions were large in amount.

There were also offered in evidence several letters passing between the assured and appellee, all of them having to do with loans being made by appellee to the assured. Among these was one dated April 11, 1910, wherein appellee, after making reference to several of their business transactions, wrote as follows:

"I have thought recently of the importance of your life in the most of the matters in which you and I are now or likely to be interested, and that it would be wise to have an assignment of some of your policies of insurance covering about such an amount as is wise to have an assignment of some of your policies which I once held removed this factor which has not been replaced. I understand that these particular policies are deposited with the companies issuing them, but dare say you have others that are not so deposited."

It further appeared from the evidence that there had also been deposited with appellee a policy on the life of the assured, issued by the State Mutual Life Insurance Company, which had also been delivered to the issuing company, to be used, as appellee testi-

Mutual Life Ins. Co. of N. Y. v. Ritsher et al., 196 Ill. App. 27.

fied, "as the basis of a loan to Mr. Ritsher." That transaction took place in December, 1908.

Appellant, in her answer and upon the trial of the case, admitted the making of the assignment. She claims, however, that whatever interest appellee had by virtue of this assignment, it was released at the time said policy was delivered to the complainant at the request of the assured, for the purpose of securing a loan, the proceeds of which were paid to appellee. She also contends that the agreement whereby this policy and assignment were delivered as collateral security for debts owing and to be owing in the future, being an oral one, it must, under the evidence, be considered as a contract not to be performed within one year from the date thereof, and therefore void under the Statute of Frauds.

In urging this latter contention, appellant asserts that there is no evidence in the record to show what indebtedness, if any, was existing at the time the policy and the assignment were delivered as collateral security, viz., in 1903; that while appellee testified that there were continual transactions between himself and the assured from that time to the latter's death on June 2, 1910, yet the only evidence of indebtedness in the record was in the form of notes and checks issued during May and June, 1910; that therefore the appellee's claim being dependent upon an indebtedness which the evidence discloses arose more than a year after the making of the agreement, such agreement was void under the Statute of Frauds because it was not performed within one year. However, the test to determine whether such agreement comes within the statute is not whether it was performed within a year, but whether, when the agreement was made, it could have been performed within a year; and if so, it does not come within the statute. A contract comes within the Statute of Frauds if by its terms it appears that it cannot be performed within one year from the date of

Mutual Life Ins. Co. of N. Y. v. Ritsher et al., 196 Ill. App. 27.

making thereof. This principle is well set forth in *Warner v. Texas & P. Ry. Co.,* 164 U. S. 418, wherein the court said (p. 433):

"In the case at bar, the contract between the railroad company and the plaintiff, as testified to by the plaintiff himself, who was the only witness upon the point, was that if he would furnish the ties and grade the ground for the switch at the place where he proposed to erect a sawmill, the railroad company would 'put down the iron rails and maintain the switch for the plaintiff's benefit for shipping purposes as long as he needed it.'

"The parties may well have expected that the contract would continue in force for more than one year; it may have been very improbable that it would not do so; and it did in fact continue in force for a much longer time. But they made no stipulation which in terms, or by reasonable inference, required that result. The question is not what the probable, or expected, or actual performance of the contract was, but whether the contract, according to the reasonable interpretation of its terms, required that it should not be performed within the year. No definite term of time for the performance of the contract appears to have been mentioned or contemplated by the parties; nor was there any agreement as to the amount of lumber to be sawed or shipped by the plaintiff, or as to the time during which he should keep up his mill. * * *

"If, within a year after the making of the contract, the plaintiff had died, or had abandoned his whole business at this place, or for any other reason had ceased to need the switch for the shipping of lumber, the railroad company would have been no longer under any obligation to maintain the switch, and the contract would have been brought to an end by having been fully performed.

"The complete performance of the contract depending upon a contingency which might happen within the year, the contract is not within the statute of frauds as an 'agreement which is not to be performed within the space of one year from the making thereof.'"

Such also is the holding in *Walker v. Johnson,* 96 U. S. 424; *McPherson v. Cox,* 96 U. S. 404; *Birks v. Gillett,* 13 Ill. App. 369; *Hulse v. Hulse,* 155 Ill. App. 343.

If under this agreement a loan had been made at the time the policy and assignment were delivered, or within a year thereafter, and within a year after the loan had been made, and the assured had died, then whatever moneys were due under said policy could have been claimed as security by appellee for the loans made by him under said agreement. It matters not that from the contract itself the parties contemplated that the contract was to continue in force for a period of more than one year, if by a reasonable interpretation its terms did not require it to be in force for a period of more than one year. We are therefore of the opinion that the said agreement was not within the Statute of Frauds.

This brings us to the contention of appellant, that when said policy was delivered by appellee to the complainant to enable the assured to make a loan, the proceeds of which was to be paid, and actually was paid, to the appellee, that thereby the appellee released all his interest in said policy that had accrued to him under the aforementioned assignment.

In this proceeding, being a bill of interpleader, the two claimants, viz., the appellant and the appellee, are in a position similar to that presented in *Conway v. Caswell,* 121 Ga. 254, 48 S. E. 956, wherein it was said (p. 259):

"In interpleaders both claimants are in a position similar to that of plaintiffs in other possessory actions, where the recovery must be on the strength of their own title rather than on the weakness of their adversary's title."

Both the appellant and the appellee assert that under the evidence they are entitled to the money due under the policy.

The policy and the assignment were delivered to appellee in 1903. The policy remained in his possession until 1908. During the interim, it was kept in force and the premiums paid, presumably by the assured; at least, it is certain that appellee did not pay them. In 1908, appellee states, the assured came to him and requested that the policy be delivered to the complainant so he (the assured) might secure a loan thereon. There is no evidence as to why he wished to secure this loan. It is fair to presume, however, that it was for the benefit of appellee, because he received the proceeds thereof. There is no evidence as to the exact state of indebtedness at that time. At the time of his death, the evidence of indebtedness, upon which appellee bases his claim, were the notes and checks made in May and June, 1910. These notes were collateral notes, and the collateral was therein set out in full, yet no mention is made therein of either of the insurance policies; in fact, the record is barren of any written evidence wherein it appears that either of these policies was held as collateral security.

Appellant insists that these facts and the reasonable inferences that flow therefrom show that the appellee released all claims he had had by virtue of the assignment, and that this is further evidenced by the letter of April 11, 1910, written by appellee to the assured, wherein he said:

"I have thought recently of the importance of your life in the most of the matters in which you and I are now or likely to be interested and that it would be wise to have an assignment of some of your policies of insurance covering about such an amount as is likely to be involved. The taking away of the policies which I once held removed this factor which has not been replaced. I understand that these particular policies are deposited with the companies issuing them, but dare say you have others that are not so deposited."

While the master found that said letter did not release or was not any evidence of an intention on the

part of the appellee to release his right in and to the policy in question, we cannot concur in such finding. There is no question that appellee, to secure loans then existing or to be made in the future, was endeavoring by this letter to obtain from the assured as collateral security an assignment of any policies which the assured might have, other than the policies which had been in his possession, among which was the policy in question. When appellee states therein that "the taking away of the policies which I once held removed this factor which has not been replaced," he can have reference only to the policy in question and the one issued by the State Mutual Life Insurance Company already referred to, because the record is barren of any evidence indicating that he had reference to any other policies. What was the factor that was removed? Policies or assignments to secure any transactions he had or might have had with the assured. And when appellee states further, "I understand that these particular policies are deposited with the companies issuing them, but daresay you have others that are not so deposited," such language can only be construed to mean that the appellee regarded his rights in and to said policies gone after they had been deposited with the complainant and the other insurance company. There was no evidence of any limitation upon the right of the assured to deal with the policy as he saw fit. It was in his power, for aught that appears in the record, to absolutely dispose of his right, title and interest in this policy. In fact, complainant's bill alleged that *the assured deposited with it the policy in question as collateral security* for a loan of $1,330, and the interlocutory decree so found.

Upon what does appellee base his contention that he still retained his interest in said policy, subject only to the loan made by the complainant? First, upon the fact that he retained the assignment, and further, on a conversation with the assured,—whose lips are now

36     APPELLATE COURTS OF ILLINOIS.

Mutual Life Ins. Co. of N. Y. v. Ritsher et al., 196 Ill. App. 27.

closed forever, and were at the time of the trial,— that when he delivered this policy to the complainant at the request of the assured, the latter stated that "he would borrow what money he could from the insurance company and allow the assignments to remain with me in the same manner they were before." That is the only evidence in the record to support his contention. There is no evidence of any positive act on his part to show, or tending to show, that he still considered this policy as collateral security. On the contrary, the letter of April 11, 1910, clearly showed that he no longer regarded these policies as a *factor* with reference to his business transactions with the assured. His explanation of that letter upon the trial was far from satisfactory. In fact, the record is barren of any evidence which shows that complainant had any notice whatever of the alleged claim of appellee in and to the said policy prior to the death of the assured. On the contrary, the record shows that complainant held the policy subject only to the right of the assured and the appellant.

Manifestly, to our minds, the entire course of conduct as evidenced by these facts, which are undisputed, indicates that the appellee did not rely any further upon the policy in question but had in fact released all his rights and interest therein, the consideration for his doing so being the fact that he received the entire proceeds of the loan made by complainant to the assured.

We are therefore of the opinion that the chancellor erred in finding the equities with the appellee, and that under the evidence the finding should have been for the appellant. The decree must, therefore, be reversed.

The order of this court will be that the decree be reversed and the cause remanded with directions to the chancellor to enter a decree finding the equities with the appellant.

*Reversed and remanded with directions.*