James G. Blair, Administrator of the Estate of Jack D. Adams, Deceased, Plaintiff-Appellant, v. The Travelers Insurance Company, a Corporation, Defendant.

The Travelers Insurance Company, a Corporation, Counter-Plaintiff, v. James G. Blair, Administrator of the Estate of Jack D. Adams, Deceased, Counter-Defendant-Appellant, and Harry E. Davenport and Iva M. Davenport, His Wife, Counter-Defendants-Appellees.

Gen. No. 48,149.

First District, First Division.

April 24, 1961.

Rehearing denied May 12, 1961.

Jacobson and Lieberman, of Chicago (Lawrence S. Jacobson and Myron Lieberman, of counsel) for appellant.

No other briefs were filed.

PRESIDING JUSTICE KILEY delivered the opinion of the court.

Plaintiff's decedent, Jack D. Adams, shot and killed his wife and their infant son and then committed suicide by shooting himself. At the time of the killings he was beneficiary under a $10,000 policy issued by Travelers Insurance Company on the life of his wife. Plaintiff, Administrator of Adams' estate, sued for the proceeds. The wife's parents also claimed the proceeds. Travelers interpleaded both claimants and, with leave of court, deposited $10,000 with the clerk of court to be paid to the lawful claimant. The cause was referred to a Master in Chancery. At the close of plaintiff's evidence, the Master recommended a decree sustaining the parents' motion for a finding in their favor. The decree was entered pursuant to the recommendation and the Administrator has appealed.

█ In this interpleader proceeding each claimant has the burden of establishing his own claim and neither claimant can recover on the weakness of the adverse claim. Prudential Ins. Co. v. Cahill, 321 Ill. App. 45, 53, 52 N.E.2d 481 (1943).

The Chancellor, upon agreement of the claimants, ordered the parents' answer to the complaint for interpleader to stand as their counter-claim, and the reply of the plaintiff to stand as his answer to the parents' counter-claim. Both pleadings were subsequently amended and, together with plaintiff's original complaint against Travelers, they are now the bases for the claims of the parties. See Prudential Ins. Co. v. Cahill, 321 Ill. App. 45, 54, 52 N.E.2d 481 (1943).

The parents' amended answer alleged that public policy of Illinois precluded Adams or his personal representative, the plaintiff, from taking under the certificate of insurance because the beneficiary,

193

Adams, had unlawfully caused the death of the insured. They further asserted that they were entitled to the proceeds of the insurance because "they are the natural surviving parents of the insured who came to her death unjustifiably . . . at the hands of . . . the beneficiary," Adams. The amended reply by plaintiff denied that plaintiff should be precluded from taking the proceeds and further alleged that plaintiff's decedent was insane at the time of the killing.

■■■■ At the hearing before the Master plaintiff was ordered to proceed "to prove his case," presumably for the purpose of rebutting the presumption in the parents' favor that Adams was sane. Montag v. People, 141 Ill. 75, 80, 30 N.E. 337 (1892). When plaintiff introduced testimony of insanity reasonably sufficient to overcome the presumption of sanity, the parents had the burden of going forward with proof of sanity. They introduced no evidence. Nevertheless, in this proceeding plaintiff's ultimate burden was to prove a prior right to the proceeds. That is to say, he had to prove by a preponderence of the evidence that Adams was insane at the time he killed the insured and was, therefore, not disqualified as a beneficiary.

The Master found "that the evidence . . . fails to show that the said Jack D. Adams . . . was insane at the time of the killing"; that plaintiff "is not entitled to collect the insurance" because it "is contrary to public policy to so construe a contract of insurance that a murderer, or in this case, a killer never having the chance to be prosecuted, may be the beneficiary"; and that only the "survivors of the intestate wife" are eligible to claim the funds.

■■■ The finding was confirmed by the Chancellor. The question for us is whether the decree resting on these findings is proper under the law and the evi-

194

dence. Thomas v. Kowalewski, 18 Ill. App. 2d 612, 153 N.E.2d 115 (1958).

The testimony for plaintiff on the insanity issue was that of relatives of Jack D. Adams who testified to his change of habits and conduct during about three months previous to his death. This indicated a radical change in, and deterioration of, his personality. He had been cheerful and became depressed and withdrawn. Before the tragedy he was a steady employee but he stopped going to work. He had been neat and well-groomed and became slovenly and ungroomed. A loving and considerate husband and father, he turned from his wife and son and "in the last three weeks" refused to have anything to do with them. He spent most of his time during his last several weeks, in bed or in a room with drawn blinds, crying, pounding his head, persisting in the statements that he had made a "mess" of his life and the lives of all that he touched. Several weeks before his death, he stated that he was going to take his own life and take his wife and son with him. These lay witnesses gave opinions that Adams was incapable of distinguishing right from wrong.

In addition to this non-professional testimony, there was the testimony of an eye, ear, nose and throat specialist who examined Adams for eye trouble. He also observed the depressed mood and abnormal reactions and wrote a "strong letter" urging Adams' admission to psychiatric treatment at County Hospital. There was also the testimony of a qualified psychiatrist who answered a hypothetical question based on the uncontroverted facts of Adams' mental deterioration. His opinion was that at the time Adams killed his wife and boy, he was incapable of distinguishing between right and wrong; that "he felt it was right that he should take her life, his own and this child's, to wipe out this whole family because of

195

his deep and profound depression; . . . that he felt that the only way out and escape from reality was to commit suicide . . . that was the right thing to do . . . to wipe out his entire family."

Though the testimony was not controverted by defense testimony, the cross-examination of plaintiff's lay witnesses could have cast doubt upon their testimony. They did nothing to help Adams during the period in which they said they observed his deterioration; they did not talk to Adams' wife about it nor discuss corrective measures among themselves. Nevertheless, it seems clear to us that the testimony of the doctors, and especially the psychiatrist, weighed the balance heavily in favor of the plaintiff on this question.

■ It is our opinion that the testimony of Adams' insanity clearly preponderated over the presumption of sanity which operated in favor of the parents. The presumption was the only support under the parents' claim on the insanity question aside from any doubt raised on cross-examination. We conclude that the findings of the Master and Chancellor that plaintiff failed to show Adams was insane are erroneous.

In view of our conclusion on the insanity question, we must now determine whether Adams, shown to be "an insane killer" of the insured, is disqualified from taking as a named beneficiary.

Plaintiff relies upon Holdom v. Ancient Order of United Workmen, 159 Ill. 619, 43 N.E. 772 (1896), for the rule "that if a beneficiary is insane at the time he kills the insured, the beneficiary is not disqualified from taking the proceeds of the policy." In that case an insane son, beneficiary under his father's certificate of insurance, killed his father. The trial court's judgment allowing the conservator to recover the proceeds was reversed by this court. 51 Ill. App. 200 (1894). Our Supreme Court reversed the judgment

of this court and held: "Where an insane beneficiary . . . kills the assured under such circumstances as would cause the killing to be murder if the beneficiary were sane, such killing does not cause forfeiture of the policy nor bar his right of recovery for the 'insurance money'."

That case is distinguishable from this to the extent that the decision there was on the pleadings and suit was against the insurance company. Here the decision was on the evidence and the proceeding was interpleader.

The Court in the Holdom case had in view the "maxim" against a wrongdoer profiting by his intentional wrong and also had in mind the humane rule that an insane killer is not a murderer. The reason for its decision was that there was no law and, therefore, no public policy in Illinois which forfeits the right of an insane beneficiary killer under circumstances which would be murder if the beneficiary had been sane.

We think that we can safely extend the rule in the Holdom case to the case before us. The "only" question in Holdom, according to the Supreme Court, was whether the insane killer "forfeited his right to recovery." The question here is whether "an insane killer" of the insured is "disqualified as a beneficiary." Although we have found no precise authority in Illinois or elsewhere for our decision, we think the following citations of the Holdom case support the extension we give it: 1 Richards, Insurance 497 (5th Ed. 1952); Ohio State Life Ins. Co. v. Barron, 274 Mich. 22, 263 N.W. 786 (1935); and United States v. Kwasniewski, 91 Fed. Supp. 847 (E.D. Mich. 1950), wherein the court quoted the Holdom rule from the Ohio State Life Ins. Co. case.

■ We find that Adams was insane at the time he killed the insured. We hold, therefore, that Adams

197

was not precluded from recovering the proceeds of the insurance and that plaintiff, as Adams' personal representative, is not precluded. It follows that we think the decree was erroneous and that under the law and evidence the finding should have been for plaintiff. See Mutual Life Ins. Co. of N. Y. v. Ritsher, 196 Ill. App. 27 (1915).

We need not decide the other point made by the parents.

For the reasons given the decree is reversed. We have the power to enter the correct decree in this court. Thomas v. Kowalewski, 18 Ill. App. 2d 612, 153 NE2d 115 (1958). However, in this case we think it better to remand the cause with directions to enter a decree in favor of the plaintiff administrator. It is so ordered.

Reversed and remanded with directions.

BURMAN and MURPHY, JJ., concur.