102 N.J. Super. 235 (1968)
245 A.2d 761
EVALINE B. RAY CAMPBELL, PLAINTIFF,
v.
GLADYS A. RAY, ETC., ET AL., DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided June 14, 1968.
Mr. Jesse Moskowitz for plaintiff.
*236 Mr. Murray Greiman for defendants (Messrs. Lifland and Greiman, attorneys).
MATTHEWS, J.S.C.
This is an action instituted by plaintiff Evaline B. Ray Campbell against defendant Gladys A. Ray, as guardian of Lisa Ray, a minor, and as administratrix of the estate of Burt R. Ray, deceased, seeking to recover the proceeds of certain policies of life insurance on the life of decedent of which she was originally named beneficiary, and her statutory share of the estate of the said Burt R. Ray who died intestate.
Originally, plaintiff named as defendants Mrs. Ray, individually, Murray Greiman, counsel for the administratrix, the Metropolitan Life Insurance Company and the Equitable Life Assurance Society of the United States. The claims against these parties were dismissed on motion prior to the commencement of trial.
Although plaintiff Evaline Ray Campbell was the named beneficiary, the Metropolitan Life Insurance Company paid the proceeds of the two policies that it had issued on the life of the decedent totalling $13,276.76 to defendant Gladys Ray, in her capacity as administratrix of the estate of Burt R. Ray, deceased, since plaintiff had been convicted of second degree murder in the death of her husband, Burt Ray. The Equitable Life Assurance Society refused to make payment on the policy which it had issued until plaintiff executed a change of beneficiary designating her infant daughter Lisa as beneficiary in her place. Such a document was executed by plaintiff while she was detained at Clinton Reformatory for Women on March 29, 1963. Additionally, a document entitled "Release and Disclaimer" was executed by plaintiff under the same circumstances on April 8, 1963. On April 22, 1963 Equitable Life paid the sum of $20,000, representing double idemnity for accidental death on a $10,000 policy, and the sum of $366.58 as accrued interest from the date of death to the date of payment to Gladys A. Ray, as guardian for Lisa Ray.
*237 Defendant, both in her capacity as guardian and as administratrix, resists the action instituted herein on the following grounds: (1) regardless of any other consideration, insofar as the Equitable policy is concerned plaintiff assigned any rights she may have had thereto and (2) plaintiff had murdered her husband and is, therefore, not entitled to the proceeds of the Metropolitan policies, despite the fact that she was the named beneficiary thereon, because of the doctrine recognized in this State that one may not benefit from his own wrong. See In re Estate of Kalfus, 81 N.J. Super. 435 (Ch. Div. 1963).
Plaintiff denies that she murdered her husband and, in any event, claims that at the time of the alleged act, concerning which she has no present memory, she was legally insane and incapable of forming the requisite intent to have committed the crime with which she was charged. Accordingly, she contends she is entitled to the proceeds of the Metropolitan policies mentioned herein and the widow's statutory share of her husband's estate. With respect to the Equitable policy, she claims that the change of beneficiary and the release and disclaimer allegedly executed by her are invalid because she lacked mental capacity at the time both were signed.
Plaintiff testified at trial that she has no present recollection of any of the events surrounding the death of her husband or her incarceration at Clinton Reformatory. In view of this fact, I have permitted into evidence the testimony given by plaintiff at her first trial under the indictment charging her with murder. Rule 63(3), Rules of Evidence (1967). The facts adduced at the first trial of plaintiff which resulted in her conviction for the murder of her husband are reported in State v. Ray, 43 N.J. 19, 21-24 (1964). That opinion reversed the conviction below and remanded the matter to the Hudson County Court for a new trial. The statement of facts hereinafter set forth serve to supplement the facts set forth in State v. Ray, supra, and describe the events that transpired subsequent to conviction. [The court here reviewed the testimony.]
*238 Dr. Litkey who treated plaintiff at Trenton was most familiar with plaintiff's personality traits. While it is true that plaintiff was under stress at Clinton, it must be remembered that Dr. Litkey's opinion was arrived at during his course of treatment of plaintiff and not as the result of an isolated interview held some years after the event in question. I find I must accept his conclusion that plaintiff's psychiatric condition predated her confinement and that she was legally insane at the time she caused the death of her husband.
Having determined the question of plaintiff's insanity at the time of the death of her husband, there remains for determination the factual question as to whether plaintiff was competent to understand the nature of her act in signing the Change of Beneficiary and Release of benefits on March 29 and April 8, 1963, respectively. It was Dr. Litkey's opinion that plaintiff was not competent to execute either document on the dates in question. This opinion was concurred in by Dr. Sherman.
I must conclude that plaintiff's action in signing both the Change of Beneficiary and the Release forms was well within the response expected of the stimulus presented to her, i.e., a desire to see that her infant daughter was cared for.
The question remaining for consideration is one of law. Stated simply, it is as follows: Does a wife who murders her husband have a right to claim the proceeds of an insurance policy on his life where she is named beneficiary, and to inherit an intestate share of his estate where she was insane at the time that she committed the act? As thus phrased, this is a question of first impression in this jurisdiction.
We have had a number of decisions in this State in which the rights of a murderer to acquire property from his victim by devise, descent, as a surviving co-tenant, or as the beneficiary of a life insurance policy have arisen. In none of these cases, however, did the question arise as to the rights of a wrongdoer who did not possess the requisite mental capacity on which to base legal responsibility for his or her acts. A fine *239 summary of the cases which have been adjudicated by our courts are found in Judge Pashman's opinion in In re Estate of Kalfus, 81 N.J. Super. 435 (Ch. Div. 1963). These cases hold, briefly, that as a matter of equity the courts will not allow a wrongdoer to enrich himself as a result of his own criminal acts at the expense of an innocent person. In such cases, equity raises a constructive trust which it imposes on the property in question because of the unreasonable mode of its acquisition and thereby prevents the wrongdoer from unjust enrichment.
The question presented here has been answered in the decisions of courts in other jurisdictions. A reading of those decisions leads to the conclusion that there are three situations in which acquisition of property from one deceased is permitted to his slayer even though the events leading to the transfer of the property in question were initiated by a murder. Thus, it has been held that a wrongdoer may acquire property from his victim if the slayer is insane at the time of the commission of his act if the killing was accidental or in self defense, or if the wrongdoer was convicted of the reduced charge of manslaughter.
A decision most directly in point with the facts of this case is Holdom v. Grand Lodge, A.O.U.W., 159 Ill. 619, 43 N.E. 772, 31 L.R.A. 67 (1895), where the beneficiary of an insurance policy murdered the insured. The beneficiary claimed that he did not murder the insured so as to forfeit all rights of the certificate of insurance, although he did kill the insured while he (the beneficiary) was insane. After reviewing the tort liability of the insane and the liability of a life insurance company when the assured commits suicide while insane, the Court concluded without further reasoning that:
"* * * Where an insane beneficiary in a life policy kills the assured under such circumstances as would cause the killing to be murder if the beneficiary were sane, such killing does not cause a forfeiture of the policy, nor bar his right of recovery for the insurance money." (43 N.E. at 774).
*240 Subsequently, in Blair v. Travelers Ins. Co., 30 Ill. App.2d 191, 174 N.E.2d 209 (1961), the Appellate Court of Illinois reaffirmed the Holdom decision, stating:
"The Court in the Holdom case had in view the `maxim' against a wrongdoer profiting by his intentional wrong and also had in mind the humane rule that an insane killer is not a murderer. The reason for its decision was that there was no law and, therefore, no public policy in Illinois which forfeits the right of an insane beneficiary killer under circumstances which would be murder if the beneficiary had been sane." (174 N.E.2d at 211)
In In re Eckardt's Estate, 184 Misc. 748, 54 N.Y.S.2d 484 (1945), a Surrogate's Court considered the question of whether or not a wife may share in her husband's estate, claim the proceeds of his insurance, and take sole ownership of the realty owned by the entirety, where she had been acquitted of the husband's murder on the ground that she did not know of the nature of her act. After stating that there was no prior case law in New York and citing Holdom, the Court concluded that, since "legally the wife committed no wrong, not knowing at the time the nature and quality of her act" (54 N.Y.S.2d at 490), she could receive the proceeds of the life policy, take sole ownership of her joint real estate, and claim as distributee of the estate. Similar results were reached in Ohio State Life Ins. Co. v. Barron, 274 Mich. 22, 263 N.W. 786 (1935), where it was held that the single issue of fact concerns the sanity of the beneficiary because there would be no forfeiture of the right to claim the proceeds if the beneficiary was insane at the time the insured was murdered; and Shoemaker v. Shoemaker, 263 F.2d 931 (6 Cir. 1959), where it was held that the beneficiary of a National Service Life Insurance policy who murdered the insured may not claim the proceeds "unless the beneficiary was insane at the time, or the killing was accidental, or was committed in self-defense." See also, Simon v. Dibble, 380 S.W.2d 898 (Ct. Civ. App. Tex. 1964).
*241 The decision in United States v. Kwasniewski, 91 F. Supp. 847 (E.D. Mich. 1950), is not contrary to the decisions just cited. In that case, which involved an action in the nature of interpleader instituted to determine who had claim to the proceeds of a National Service Life Insurance policy, the principal beneficiary was dead and the contingent beneficiary was responsible for the death of the insured. The Court chose to disregard defendant's acquittal of the killing on the defense of temporary insanity by making its own independent finding that the defendant had committed a wrongful, unlawful and intentional act. Thus, the Court concluded that although murder by an insane person is an exception to the rule of permitting recovery of benefits by a person who kills another and to whom such benefits would accrue only on the death of the victim, it could not find the defendant insane under the facts of the case.
The conclusion that an insane beneficiary of a life insurance policy may recover the proceeds and share in the estate even though he murdered the insured is supported by several analogous property decisions found in other jurisdictions. See e.g. Anderson v. Grasberg, 247 Minn. 538, 78 N.W.2d 450 (1956) (joint tenancy); and Eisenhardt v. Siegel, 343 Mo. 22, 119 S.W.2d 810 (1938) (reversion).
In applying the equitable doctrine that a person should not profit by his own wrong, a court of equity imposes a constructive trust whenever the legal title to property is obtained under such circumstances that it would be unconscionable for the recipient of the legal title to enjoy the beneficial interest and thus be unjustly enriched. When one who perpetrates a killing is insane, it is appropriate to inquire whether the basis upon which such a doctrine rests still exists. As a civilized society we recognize that insanity is a defense against punishment for crime. We recognize this defense because if the perpetrator of the alleged crime is mentally diseased to the extent that he does not have the requisite intent to commit the crime, the act lacks an element constituting the crime which the law seeks to punish. So *242 in a case where one benefits from an unlawful act, such as a killing, committed without intent because of disease of the mind, it cannot be concluded that he perpetrated the act with the end in view of profiting thereby. In such circumstances, if it was not his will that the act be perpetrated, it does not seem proper for the law to conclude that he has committed a wrong such as to bar him from receiving benefits which arise solely because of the death of an individual which in fact was not intended.
Since there is nothing in our law with respect to this question, based upon the reasoning of the courts just cited, and the absence of any expression by the Legislature in this area, I conclude that it is not against the public policy of this State to permit one who has killed while insane subsequently to take a share of the estate of the deceased or the proceeds of a policy of life insurance on the life of the deceased of which the insane killer is beneficiary. Accordingly, I conclude that the plaintiff is entitled to the proceeds of the Metropolitan Life Insurance policies in the amount of $13,276.76 which were paid to defendant Gladys A. Ray in her capacity as administratrix of the Estate of Burt R. Ray, and to her statutory intestate share of the personal estate of her husband, Burt R. Ray. I further find, in the first instance, that plaintiff was entitled to the proceeds of the Equitable Life Assurance policy; however, in view of my finding that plaintiff had the requisite mental capacity when she signed both the Change of Beneficiary and the Release in favor of her daughter Lisa, the proceeds of that policy were properly paid to Gladys A. Ray, as guardian for Lisa Ray. No costs to either party.