183 N.J. Super. 342 (1982)
443 A.2d 1113
IN RE ESTATE OF DESAPATHI VADLAMUDI, DECEASED.
IN THE MATTER OF JAYA VADLAMUDI & SANDYHA VADLAMUDI, MINORS.
Superior Court of New Jersey, Law Division Probate Part, Middlesex County.
Decided January 26, 1982.
*343 Samuel C. Inglese for Jagan Vadlamudi (Moss & Inglese, attorneys).
*344 William H. Gazi, guardian ad litem for Jaya Vadlamudi and Sandyha Vadlamudi, minors (Foley & Gazi, P.A., attorneys).
Gail S. Boertzel for Amita Vadlamudi (Stephen S. Weinstein, attorney).
LONGHI, J.S.C.
This matter comes before the court on the return date of two orders to show cause issued in these companion cases instituted by Jagan Vadlamudi in his capacity as administrator of the estate of Desapathi Vadlamudi and as guardian of the person and property of the two minor children of decedent. The administrator seeks instructions as to whether (1) under N.J.S.A. 3A:2A-83(a) decedent's surviving spouse, Amita, is entitled to share in his estate and (2) under N.J.S.A. 3A:2A-83(c) she is entitled as named beneficiary to receive the proceeds from insurance policies issued on the life of decedent, or whether such proceeds should pass to the alternate beneficiaries.
The material facts are not in dispute. On February 14, 1981 Amita Vadlamudi killed her husband Desapathi with an axe. She was tried on a charge of murder on September 16 and 17, 1981 by a judge without a jury and found not guilty by reason of insanity. The evidence at the murder trial included the reports of three psychiatrists and a practicing licensed psychologist. Two of the doctors testified. All of the doctors and psychologist were of the opinion that at the time she killed her husband Amita was suffering from a "brief reactive psychosis" and did not know that her act of killing was wrong. At least one psychiatrist, Dr. David Flicker, was of the opinion that Amita knew she was killing her husband with the axe. All concluded that she was insane at the time of the killing.
N.J.S.A. 3A:2A-83 generally states that one who intentionally kills another is barred from receiving any benefits by reason of the death of the decedent to which the killer would otherwise have succeeded. The statute provides in pertinent part:

*345 a. A surviving spouse, heir or devisee who intentionally kills the decedent is not entitled to any benefits under a[n] ... estate and the estate of decedent passes as if the killer had predeceased the decedent...
........
c. A named beneficiary of a ... life insurance policy ... who intentionally kills ... the person upon whose life the policy is issued is not entitled to any benefit under the ... policy ..., and it becomes payable as though the killer had predeceased the decedent.
........
e. A final judgment of conviction of intentional killing is conclusive for purposes of this section. In the absence of a conviction of intentional killing the court may determine by a preponderance of the evidence whether the killing was intentional for purposes of this section....
This statute was enacted as part of the new Wills and Probate Reform Act, L. 1977, c. 412, codified as N.J.S.A. 3A:2A-1 et seq., which was adapted from the Uniform Probate Code. See Assembly Judiciary, Law, Public Safety and Defense Committee Statement to Assembly Bill 1712 of 1977. The above-cited provisions of the statute are virtually identical to the corresponding subsections of Uniform Probate Code (U.L.A.), § 2-803 (1969).
Counsel for Jagan Vadlamudi urges the court to consider whether the adoption of N.J.S.A. 3A:2A-83 in any way changes or modifies the common law rule that the killing of another by a person who is insane does not constitute a bar to sharing in decedent's estate or life insurance policies. He argues that the phrase "intentionally kills" in a civil action brought under N.J.S.A. 3A:2A-83 has a different connotation than it has in the area of criminal responsibility. Thus, he argues that one who kills while insane is not necessarily entitled to benefit from the death of the decedent because the killer, although suffering from a disease of the mind so as to escape criminal responsibility, may nevertheless have intended the homicidal act so as to bring the homicide within the provisions of N.J.S.A. 3A:2A-83(a) through (d). He further argues that, in any event, the Probate Court in a civil action such as this should hold a plenary hearing on the issue of insanity and arrive at its own independent *346 findings. Counsel for Amita argues that one who kills while insane is entitled to take benefits from the decedent as a matter of law. She further argues that an acquittal of murder by reason of insanity is conclusive on the issue of insanity and makes any further hearings in the probate action unnecessary.
The issues to be decided at this juncture of the case are clearly framed. (1) Is a person who kills another while insane one who "intentionally kills" within the meaning of N.J.S.A. 3A:2A-83; (2) Does an acquittal of a murder charge by reason of insanity have a conclusive effect for purposes of N.J.S.A. 3A:2A-83, or (3) Should the probate court conduct a plenary hearing and make an independent factual determination as to whether a person was legally insane at the time of the killing.
My research has failed to disclose any reported cases in New Jersey or in the other 12 states that have enacted statutes adapted from § 2-803 of the Uniform Probate Code[1] which pass directly on these questions.
Prior to enactment of N.J.S.A. 3A:2A-83 it was the law of this State "to permit one who has killed while insane subsequently to take a share of the estate of the deceased or the proceeds of a policy of life insurance on the life of the deceased of which the insane killer is beneficiary." Campbell v. Ray, 102 N.J. Super. 235, 242 (Ch.Div. 1968), aff'd o.b. 107 N.J. Super. 509 (App.Div. 1969), aff'd 56 N.J. 52 (1970); see DeSena v. Prudential Ins. Co. of America, 117 N.J. Super. 235, 241 (App.Div. 1971) (dictum). Campbell itself was a case of first impression in New Jersey concerning the common law rights of an insane killer to benefit from the death of his victim. The Campbell court decided to allow recovery of benefits as a matter of law when the homicidal act was committed while insane. This decision is *347 based upon the underlying premise that an insane killer's responsibility under the equitable doctrine subjecting him to forfeiture of benefits is no greater than his responsibility under the criminal law subjecting him to punishment as one who intentionally kills, since in either instance he is equally incapable of forming the requisite intent:
As a civilized society we recognize that insanity is a defense against punishment for crime. We recognize this defense because if the perpetrator of the alleged crime is mentally diseased to the extent that he does not have the requisite intent to commit the crime, the act lacks an element constituting the crime which the law seeks to punish. So in a case where one benefits from an unlawful act, such as a killing, committed without intent because of disease of the mind, ... if it was not his will that the act be perpetrated, it does not seem proper for the law to conclude that he has committed a wrong such as to bar him from receiving benefits which arise solely because of the death of an individual which in fact was not intended. [102 N.J. Super. at 241-242]
Other authorities which consider the problem take a similar, if not identical view. See, e.g., Shoemaker v. Shoemaker, 263 F.2d 931 (6 Cir.1959); United States v. Kwasniewski, 91 F. Supp. 847 (E.D.Mich. 1950); Blair v. Travelers Ins. Co., 30 Ill. App.2d 191, 174 N.E.2d 209 (App.Ct. 1961); Ohio State Life Ins. Co. v. Barron, 274 Mich. 22, 263 N.W. 786 (Sup.Ct. 1935); Eisenhardt v. Siegel, 343 Mo. 22, 119 S.W.2d 810 (Sup.Ct. 1938); Matter of Bobula, 19 N.Y.2d 818, 227 N.E.2d 49, 280 N.Y.S.2d 152 (Ct.App. 1967); In re Eckardt's Estate, 184 Misc. 748, 54 N.Y.S.2d 484 (Surr.Ct. 1945); Simon v. Dibble, 380 S.W.2d 898 (Tex.Civ.App. 1964); Restatement, Restitution, § 187, comment e, and § 189, comment d; Annotation, "Killing of insured by beneficiary as affecting life insurance or its proceeds," 27 A.L.R.3d 794 (1969); Annotation, "Felonious killing of ancestor as affecting intestate succession," 39 A.L.R.2d 477 (1955), and cf. Ruvolo v. American Cas. Co., 39 N.J. 490, 496, 499 (1963). Some authorities have extended the rule. See, e.g., Anderson v. Grasberg, 247 Minn. 538, 78 N.W.2d 450 (Sup.Ct. 1956); Sobel v. National Bank & Trust Co., 71 Pa. D. & C. 321 (Dist. & Cty.Ct. 1950).
It is an established principle of statutory construction that, absent an explicit statement of a contrary legislative intent, statutes are to be construed with reference to the principles *348 of the common law, and the law infers that a statute does not intend to make any alteration to common law other than what is specified. See, e.g., State v. Western Union Tel. Co., 12 N.J. 468, 486 (1953), app. dism. 346 U.S. 869, 74 S.Ct. 124, 98 L.Ed. 379 (1953); Blackman v. Iles, 4 N.J. 82, 89 (1950); Wayne Tp. v. Ricmin, Inc., 124 N.J. Super. 509, 515-516 (App.Div. 1973). If a change in common law is to be effectuated, the legislative intent to do so must be clearly and plainly expressed. Ibid. If the statute merely constitutes a reaffirmance of the existing law, it becomes doubtful that any innovations were intended. 2A Sutherland, Statutory Construction (4 ed. 1973), § 50.05 at 281.
Research has disclosed nothing in the decisional law of this State or in the legislative history or language of pertinent statutes to support the administrator's contention that, by use of the words "intentionally kills" in N.J.S.A. 3A:2A-83 or by virtue of the 1979 revision of the New Jersey Code of Criminal Justice, N.J.S.A. 2C:1-1 et seq., the Legislature intended to alter the approach or result which would have obtained under prior common law concerning the rights of an insane killer to acquire property from his victim by devise, descent, as a surviving joint tenant or as the beneficiary of a life insurance policy. There is no merit to the suggestion raised at oral argument that the definition of insanity has so changed in this jurisdiction since the time of the Campbell decision that the Campbell rule should be deemed inapplicable under N.J.S.A. 3A:2A-83. On the contrary, New Jersey employed the M'Naghten test of legal insanity at that time and still does. Compare N.J.S.A. 2C:4-1 with State v. Maik, 60 N.J. 203, 212-213 (1972), and State v. Lucas, 30 N.J. 37, 67-72 (1959). It has also been recognized that the basic reason for denying recovery under the general common law rule, as under N.J.S.A. 3A:2A-83, is that the beneficiary "intentionally killed" the decedent:
[T]he underlying reason why recovery was denied was not because the manner of death was murder but because the killer, while of sound mind, and not in self-defense, intentionally killed the benefactor. This brief definition fits all of *349 those cases ... [A]s far as the law has ever gone is to prevent the recovery of benefits which would not have become due and payable except for the intentional taking of the life of the benefactor....
........
It is necessary to keep in mind that running through the adjudicated cases the real reason for not permitting recovery is that the beneficiary intentionally took the life of the insured and that the intentional act should not place the beneficiary in position to enjoy a benefit which would not have been enjoyed and could not have been enjoyed except for the wicked intentional killing.... [Metropolitan Life Ins. Co. v. McDavid, 39 F. Supp. 228 (E.D.Mich. 1941), quoted in Jackson v. Prudential Ins. Co. of America, 106 N.J. Super. 61, 70-71 (Law Div. 1969)]
If a homicide was accidental or committed by the beneficiary in self-defense or while legally insane, the killing was not "intentional" for purposes of disqualifying a beneficiary from succession to property of the decedent, and recovery was permitted. Finally, according to the committee statement detailing the consistencies and inconsistencies of the Wills and Probate Reform Act of 1978 with then existing law, N.J.S.A. 3A:2A-83 "codifies existing New Jersey caselaw relating to the effect of the homicide of a decedent". Assembly Judiciary, Law Public Safety and Defense Committee Statement to Assembly Bill 1712 of 1977.
Thus, as to the first issue raised, this court holds that under N.J.S.A. 3A:2A-83 the perpetrator of a homicidal act committed while legally insane cannot be, as a matter of law, one "who intentionally kills" within the meaning of that section.
Insofar as the second issue is concerned, the court holds that an acquittal of a homicidal act in a criminal proceeding by reason of insanity has no conclusive effect for the purposes of N.J.S.A. 3A:2A-83.
There is a body of law in New Jersey which generally holds that an acquittal of criminal or quasi-criminal charges does not have preclusionary consequences in respect to a subsequent civil action based on the same conduct. East Hanover Tp. v. Cuva, 156 N.J. Super. 159, 163 (App.Div. 1978). And see In re Pennica, 36 N.J. 401 (1962); Freudenreich v. Fairview, 114 N.J.L. 290 (E. & A. 1934); In re Darcy, 114 N.J. Super. 454 (App.Div. 1971).
*350 Subsection (e) of N.J.S.A. 3A:2A-83 states that a "final judgment of conviction of intentional killing is conclusive for the purpose of this section." It does not state that an acquittal is conclusive. Instead, the statute goes on to state that "[i]n the absence of a conviction of intentional killing, the court may determine ... whether the killing was intentional for purposes of this section."
There are no reported cases prior to enactment of the statute wherein an acquittal of a homicide in a criminal trial by reason of insanity obviated the necessity of trial or hearing on the insanity issue in a civil action. It is noteworthy that Campbell, supra, was a civil case decided in June 1968, well after the perpetrator of the homicidal act had been acquitted of criminal charges in 1967 by reason of insanity. See State v. E.B.R., 139 N.J. Super. 166, 167 (App.Div. 1976). The trial court in Campbell conducted a trial and determined for itself the issue of the perpetrator's insanity at the time of the killing. See Campbell, supra, 102 N.J. Super. at 237, 238. No reference is made in the Campbell opinion to the perpetrator's acquittal by reason of insanity.
Research by the court reveals no case law in any jurisdiction which has permitted a killer to acquire property from the victim on the sole ground that he had been acquitted by reason of insanity in a criminal proceeding, absent an express statutory provision affording conclusive effect to an acquittal such as that contained in Cal.Probate Code Ann. § 258 (West Supp. 1981). To the contrary, there have been several cases in which courts have disregarded such acquittals. See, e.g. California-Western States Life Ins. v. Sanford, 515 F. Supp. 524, 532-533 (E.D.La. 1981); United States v. Kwasniewski, supra, 91 F. Supp. at 851, 853; In re Eckardt's Estate, supra, 184 Misc. at 749-750, 54 N.Y.S.2d at 485-486; Hair v. Pennsylvania Life Ins. Co., 533 S.W.2d 387 (Tex.Civ.App. 1972, writ ref'd n.r.e.). The official comment to the Uniform Probate Code, § 2-803, from which our statute was adapted, explains in this connection that

*351 While conviction in the criminal prosecution under this section treated [sic] as conclusive on the matter of succession to the murdered person's property, acquittal does not have the same consequences. This is because different considerations as well as a different burden of proof enter into the finding of guilty in the criminal prosecution. Hence it is possible that the defendant on a murder charge may be found not guilty and acquitted, but if the same person claims as an heir or devisee of the decedent, he may in the probate court be found to have feloniously and intentionally killed the decedent and thus be barred under this section from sharing in the estate. An analogy exists in the tax field, where a taxpayer may be acquitted of tax fraud in a criminal prosecution but found to have committed the fraud in a civil proceeding. In many of the cases arising under this section there may be no criminal prosecution because the murderer has committed suicide.
As already noted, our statute provides that in the absence of a conviction of intentional killing, the court in a civil action may determine the issue of intentional killing of decedent by the perpetrator. The language is permissive and thus gives the court discretion whether to conduct a hearing. In my view, that discretion ought to be liberally exercised in favor of a hearing. The circumstances of this case were that the homicide was unwitnessed. The criminal trial court's finding of insanity rested on the post-event opinions of medical experts based on the history supplied by Amita and on her initial statement to the police, as well as the observations of Amita by the doctors and the police who were first on the scene. It may well be that a civil hearing will produce the same results as the criminal trial. However, the parties to this civil litigation against whom preclusion is in effect being urged were neither parties nor witnesses in the prior criminal trial. "The disparate consequences of a criminal adjudication and a civil proceeding, as well as the constitutional limitations on procedure and evidence in a criminal trial which do not exist in a civil action" are reasons enough to conclude that the criminal court's prior finding of insanity does not make any further determination in this court unnecessary as a matter of law. See Sanford, supra, 515 F. Supp. at 533.
In view of the above the court will hold a hearing on the issue of the sanity of Amita Vadlamudi at the time she killed her husband. The parties may have a period of 90 days in which to conduct discovery and develop all relevant evidence.
NOTES
[1] See Alaska Stat. § 13.11.305; Ariz. Rev. Stat. Ann. § 14-2803; Colo. Rev. Stat. § 15-11-803; Hawaii Rev.Stat. § 560:2-803; Idaho Code, § 15-2-803; Me. Rev. Stat. Ann. tit. 18A, § 2-803; Mich. Stat. Ann. § 27.5251 [M.C.L.A. § 700.251]; Minn. Stat. Ann. § 524.2-803; Mont.Rev.Codes Ann. § 91A-2-803; Neb. Rev. Stat. § 30-2354; N.M. Stat. Ann. § 45-2-803; N.D. Cent. Code § 30.1-10-03; Utah Code Ann. § 75-2-804.