**Cekovich Estate**

*Barris Siegel,* for petitioner.

*Morgan H. Sohn,* guardian ad litem for minor children of petitioner, p. 11.

REED, P. J., May 17, 1972.—Pursuant to the provisions of the Uniform Declaratory Judgments Act of June 18, 1923, P. L. 840, 12 PS §831, and the Slayer's Act of August 5, 1941, P. L. 816, 20 PS §3441, Frank Herbert Cekovich filed petition praying that certain assets of the estate of Anna Cekovich, of which he was the residuary legatee, in the original amount of $14,497.79, now in excess of $15,000, should be declared vested in him and awarded to him.

From the admitted averments of the petition and the testimony and evidence admitted before the court at a hearing held on Wednesday, April 26, 1972, it appears that Anna Cekovich died November 26, 1966, having first made her last will and testament May 7, 1962, filed in the Register of Wills Office of Beaver County on December 20, 1966; letters of administration c.t.a., were awarded to Thomas Cekovich, Jr., on January 20, 1967.

Under the terms of paragraph fifth of the last will and testament of decedent, she bequeathed and devised all the rest, residue and remainder of her estate, real, personal and mixed, to the petitioner herein.

Frank Herbert Cekovich is married to Edna Cekovich; three children were born of that marriage, namely, Stephen Cekovich, born November 1, 1952, Harry Cekovich, born October 30, 1957, and Paul Cekovich, born October 4, 1960.

On March 28, 1972, Hon. Morgan H. Sohn was appointed guardian ad litem to represent the three minor children. He has filed answer to said petition in which

answer it is asserted and averred that the factual legal issue in this proceeding is whether Frank Herbert Cekovich is entitled to inherit the residuary estate of his mother; it is averred that if he is not so entitled, then said residuary estate should be declared vested in the three minor children.

The evidence established that said Frank Herbert Cekovich inflicted a gunshot wound upon his mother, Anna Cekovich, on November 25, 1966, as a direct result of which she died on November 26, 1966. On November 26, 1966, criminal charges of homicide were filed against him; on March 30, 1967, he was found to be insane and committed to Farview State Hospital at Waymart, Pa.

On September 12, 1967, at no. 1137-67, in this court, petitioner was declared mentally incompetent and Western Pennsylvania National Bank was appointed guardian of his estate. Audit of the estate of Anna Cekovich was had on May 18, 1970, and the residue thereof was awarded to the Western Pennsylvania National Bank, guardian of Frank Cekovich.

On April 30, 1971, said Frank Herbert Cekovich was ordered to be returned to Beaver County, Pa., Court of Common Pleas, Criminal Division, to stand trial for the criminal charges pending against him. On November 8, 1971, at no. 766-767 of 1971, in said Criminal Division, the grand jury approved an indictment against Frank Herbert Cekovich, charging in the first count: murder; 2, manslaughter; 3, involuntary manslaughter.

A nonjury trial was had before the Hon. J. Quint Salmon on December 20, 1971, and December 21, 1971; on December 23, 1971, Judge J. Quint Salmon entered the following verdict:

"And now, to-wit, December 23rd, 1971, pursuant

to waiver of jury trial by defendant with consent of his attorneys and attorney for the Commonwealth and approval of the court duly executed and filed under Pennsylvania Rule of Criminal Procedure No. 1101, full trial having been had, testimony having been closed and summations by counsel having been heard on December 21, 1971, the court finds the defendant Frank Herbert Cekovich inflicted a gun shot wound of the head upon his mother Anna Cekovich on November 25, 1966, as a direct result of which she died on November 26, 1966 at three o'clock A.M., and that said defendant was insane at the time of said shooting and therefore not guilty of murder by reason of insanity."

In this proceeding, the indictment, record of testimony and the verdict so entered were offered and received in evidence.

Petitioner, Frank Herbert Cekovich, contends that by reason of his acquittal on the charge of murder by reason of insanity he is entitled to inherit, subject to his guardianship, said residuary estate.

The question to be determined, therefore, is whether Frank Herbert Cekovich is entitled to the residuary estate bequeathed to him by paragraph fifth of the will of his mother, Anna Cekovich, or whether it is vested in equal shares in his three children.

In addition to her son, Frank, who testified at the hearing, decedent left to survive a son, Walter, and a son, George, to each of whom she bequeathed certain real estate, and also a son, Thomas, and a daughter, Anna Todorich. The last named two children both testified at the hearing held hereon and their testimony as well as the testimony of the petitioner is uncontradicted and establishes that petitioner, Frank Cekovich, was insane at the time of his infliction of

the gunshot wound upon his mother, Anna Cekovich, of which, as a direct result, she died on November 26, 1966.

Section 1 of the Slayer's Act defines:

"(1) The term 'slayer' shall mean any person who participates, either as a principal or as an accessory before the fact, in the wilful and unlawful killing of any other person.

"(2) The term 'decedent' shall mean any person whose life is so taken.

"(3) The term 'property' shall include any real and personal property and any right or interest therein."

Section 2 of the Slayer's Act provides that:

"No slayer shall in any way acquire any property or receive any benefit as the result of the death of the decedent, but such property shall pass as provided in the sections following."

Section 5 of the act provides as to tenancies by the entirety that:

"One-half of any property held by the slayer and the decedent as tenants by the entirety shall pass upon the death of the decedent to his estate, and the other half shall be held by the slayer during his life, subject to pass upon his death to the estate of the decedent."

The act was passed and is to be construed broadly as provided in section 15, wherein it is stated: "This act shall not be considered penal in nature, but shall be construed broadly in order to effect the policy of this State that no person shall be allowed to profit by his own wrong, wherever committed."

The Intestate Act of April 24, 1947, P.L. 80, sec. 6(c), 20 PS §1.6, and the Wills Act of April 24, 1947, P.L. 89, sec. 7(5), 20 PS §180.7, have similar provisions; the commission comments as to both of these acts states they are not intended to supplant

the provisions of the Slayer's Act, but are included for completeness and to avoid any suggestion of partial repeal of the Slayer's Act. In both the Intestate Act (section 6(c)) and the Wills Act, (section 7(5)), "slayer" is defined to mean any person (spouse) "who participates either as a principal or as an accessory before the fact in the wilful and unlawful killing of any person (testator)."

We recently had occasion in St. Clair Estate, no. 310-65, reported in 22 Fiduc. Rep. 119, to discuss the effect of the provisions of the Slayer's Act and acquittal with reference to the right of an inheritance. There we held that upon proof that the slaying was in self-defense, a widow was entitled to have real property awarded to her as a surviving tenant by the entirety. We further held that the record of *acquittal,* while admissible, *was not conclusive,* but could only be considered as a fact with other factual circumstances in determining whether the killing was willful and unlawful. This finding that the record of acquittal was competent evidence was in accord with Allstate Insurance Co. v. Johnson, 96 Pitts. 193, the Estate of Panfilo D'Amore, 37 Del. Co. 360, and Sobel, Admr. v. National Bank and Trust Company, Gdn., 33 Erie 274.

In Sobel, Judge Burton R. Laub, in a proceeding in Common Pleas Court, points out that the Slayer's Act has reference to proceedings in the civil branch of the courts (see also section 14 of the act) and held that the word "wilful" as used in defining "slayer" implies an iniquitous designing deed rather than an absence of conscious fault. In that case, Judge Laub decided where a widow, after killing her husband, is adjudged insane and committed to a State institution, it being conceded that she was insane at the time of the assault which resulted in his death,

the proceeds of a policy on his life in which she was named as beneficiary could be paid to her guardian despite the provisions of the Slayer's Act.

In Kravitz Estate, 418 Pa. 319, our Supreme Court held that a convicted slayer, beneficiary under a will, who has been convicted in a criminal court of the murder of a testator cannot relitigate in the orphans' court the issue of murder or the issue of guilt or innocence, Chief Justice Bell stating therein at page 328:

"We therefore specifically rule (1) that the *record* of conviction and judgment of sentence of Ethel Kravitz for the murder of her husband, is not merely prima facie evidence thereof, but is a *conclusive bar* to her right to take under or against her husband's will, and (2) that neither the question of 'murder' nor her guilt or innocence of the crime can be relitigated in the Orphans' Court."

See also Hurtt v. Stirone, 416 Pa. 493.

It is to be observed that Kravitz Estate changed existing law in Pennsylvania and liberally interpreted the provisions of the Slayer's Act where the record in the criminal proceedings is presented *against* the claim. We conclude that the record of the verdict of *acquittal* of murder by reason of insanity was properly admitted in evidence, but as heretofore stated, it is not conclusive but can only be considered as a fact with other factual circumstances in determining whether the killing was wilful and unlawful. See Fiduc. Rev., Aug., 1965.

Our research has not revealed any case of our appellate courts as to whether a person may be precluded from inheritance from an ancestor because of the insanity of the killer. In 39 A.L.R. 2d 477, 493, §9, it is stated that the rule of public policy which precludes a person who has feloniously killed an

ancestor from inheriting his distributive share of the victim's estate has been held inapplicable where, because of the insanity of the killer, the homicide may be justified or excused. Citing in support thereof: In Re Houghton (Eng.) (1915) 2 Ch 173; Re Pitts (Eng.) (1931) 1 Ch 546; Petrillo v. Hanley, 29 D. & C. 512, and Hoffman's Estate, 39 D. & C. 208.

In 39 A.L.R. 2d, Supplement page 803, §9, there are cited the additional cases of Campbell v. Ray, 102 N.J. Super. 235, 245 A. 2d 761, wherein it was held that a wife who murdered her husband has a right to inherit her intestate share of his estate where she was insane at the time that she committed the act, and Simon v. Dibble, 380 S.W. 2d 898, (Tex. Civ. App.), wherein it was held that a husband who was acquitted of murdering his wife on the ground of insanity was entitled as sole heir to take by lawful descent.

See also 27 A.L.R. 3d 809, and cases cited, which states that where the insured's death is caused by the beneficiary, unintentionally or not feloniously, it has generally been held the latter (beneficiary) can recover the proceeds of the insurance policy.

In the case of Holdom v. Ancient Order U.W., 159 Ill. 619, 43 N.E. 772, (1896), the Supreme Court of Illinois held that the killing of an insured by an insane beneficiary, under circumstances which would constitute murder if such beneficiary were sane, does not work a forfeiture of the policy.

Pennsylvania cases to this effect are as follows:

In Petrillo v. Hanley, supra, in an opinion by Judge Hirt, it was held that a father who, while insane, killed his son, is not barred from participation in the son's estate since he is not guilty at common law of a felonious killing.

In Hoffman's Estate, supra, Judge Graff held that

where, following the indictment of a widow for the murder of her husband, she is legally found to be insane and committed to a State hospital, her intestate share in her husband's estate should be distributed to those legally entitled to act for her, since, because she is presumptively innocent, section 23 of the Intestate Act of June 7, 1917, P.L. 429, does not bar her participation.

In Allstate Insurance Co. v. Johnson, supra, in an opinion by Judge Patterson, it was held that the conviction or *acquittal* of one sought to be excluded as a beneficiary of decedent's insurance policy is not conclusive that such one is a "slayer," under the definition as contained in the Act of August 5, 1941, P.L. 816, 20 PS §§3441 and 3456.

In the Estate of Panfilo D'Amore, supra, in an opinion by Judge Van Roden, it was held that where intestate was killed by his two sons and the uncontradicted medical evidence was that they were temporarily insane and could not determine right from wrong, they will not, as slayers, forfeit their statutory right as heirs.

It is the law of this Commonwealth that insanity is an affirmative defense to be proven by a fair preponderance of the evidence. A person who satisfies the fact finder by the fair preponderance of his insanity at the time of a killing must be found not guilty: Commonwealth v. Vogel, 440 Pa. 1; Commonwealth v. Smith, 374 Pa. 220; Commonwealth v. Zlatovich, 440 Pa. 388.

Considering all the evidence, including the record of acquittal of Frank Herbert Cekovich by reason of insanity, we find as a fact that it has been established, by a fair preponderance of the evidence, that Frank Herbert Cekovich inflicted a gunshot wound upon the head of his mother, Anna Cekovich, on November

25, 1966, as a direct result of which she died on November 26, 1966; we further find that Frank Herbert Cekovich was insane at the time of inflicting the fatal gunshot wound of the head upon his mother; we further find, by reason of said insanity, he is not guilty of a "wilful or unlawful killing" nor is he a "slayer" within the meaning of the Slayer's, Wills or Intestate Acts of this Commonwealth; we further find that he is entitled to the residuary estate bequeathed to him by paragraph fifth of the last will and testament of his mother, Anna Cekovich.